See also, D.C., 101 F.R.D. 21.

Karen **GARDINER** and Bruce Gardiner, Appellees,

v.

**A.H. ROBINS COMPANY, INC.,** Appellant,

F. Anderson Company.

Deborah and Morris **MICHALIK,** Appellees,

v.

**A.H. ROBINS COMPANY, INC.,** a Virginia Corporation, Appellant,

C.F. Anderson Company, Inc., a Minnesota Corporation.

Nos. 84–5061, 84–5062.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1984.

Decided Nov. 2, 1984.

Charles Q. Socha, Denver, Colo., and Griffin B. Bell, Atlanta, Ga., for appellant.

Dale I. Larson, Minneapolis, Minn., for appellees.

Before LAY, Chief Judge, and BRIGHT and ARNOLD, Circuit Judges.

Opinion of the Court by LAY, Chief Judge, and BRIGHT and ARNOLD, Circuit Judges.

These appeals arise out of two tort actions claiming serious injuries as a result of the plaintiffs' use of the Dalkon Shield, an intrauterine contraceptive device. The cases were settled, and both complaints have therefore been dismissed with prejudice. The Settlement Agreement, however, obligates the corporate defendant, A.H. Robins Company, Incorporated (Robins), to preserve and produce certain documentary evidence in other cases brought by other plaintiffs represented by the same law firm that is counsel for plaintiffs in the two cases at bar. The district court, over the objection of Robins, approved the Settlement Agreement and entered the notation "So Ordered" on the parties' agreement. Robins appeals, claiming that settlement of individual actions is wholly within the power of the parties, that the district court's action apparently converts a private contract into a decree a violation of which would be a contempt of court, and that the district court had no authority to approve or disapprove the Settlement Agreement. We agree and reverse.

Robins also complains that the district court, without notice or hearing, condemned it and three of its employees by reading to them in open court a "speech" excoriating them for personal and professional misconduct. Among other things, the court accused Robins' medical director of violating "every ethical precept to which ever [sic] doctor under your supervision must pledge," Appendix at A–33—A–34, and stated that it had concluded that "the plaintiffs are right." *Id.* at A–48. No trial or evidentiary hearing had been held, nor did Robins and its employees know in advance that they would be thus condemned when they appeared in court to present a consummated settlement agreement. We hold that the district court's actions were a violation of due process. The truth or falsehood of plaintiffs' claims, and the propriety, legal or ethical, of the actions of Robins and its employees are not the point here. The point is that the facts are to be determined only after notice and an opportunity for a hearing. A court must hear before it condemns. We therefore direct that the district court's "speech" and other related comments be stricken from the record.

**Facts**

Plaintiffs commenced these actions against Robins in Minnesota state court, alleging that they suffered various injuries as a result of their use of the Dalkon Shield, an intrauterine contraceptive device formerly manufactured and distributed by Robins. Robins denied plaintiffs' substantive allegations and, on August 17, 1983,

petitioned for removal of the cases, because of diversity of citizenship, to the United States District Court for the District of Minnesota. On December 13, 1983, these cases and approximately nineteen other suits pending against Robins were consolidated before the Honorable Miles W. Lord, United States Chief District Judge, District of Minnesota. Counsel for plaintiffs, Robins, Zelle, Larson & Kaplan (Robins, Zelle), acted as lead counsel in the discovery phase of the consolidated cases assigned to Judge Lord. Other Dalkon Shield cases were pending before other federal judges in the District of Minnesota and in state court in Minnesota. The district court actively participated in various aspects of the pretrial discovery of these consolidated cases.[1]

On February 16, 1984, Robins submitted a motion requesting Judge Lord to disqualify himself on the ground that he was biased and prejudiced against Robins. Judge Lord denied the motion on February 23.[2] On February 28, 1984, the parties agreed to settle the two instant cases and five other cases not before Judge Lord but which involved clients of Robins, Zelle. The other Dalkon Shield cases before Judge Lord already had been settled and dismissed. At

the time of the agreed settlement, Judge Lord had heard no trial testimony in the cases pending before him. The Settlement Agreement, which was signed by the parties' counsel on February 28, 1984, set forth an agreement by Robins relating to further discovery in other Dalkon Shield cases brought by clients of Robins, Zelle.[3] The Settlement Agreement provided for stipulated dismissals of the cases pursuant to Fed.R.Civ.P. 41(a)(1)(ii).

During discussions with counsel on February 24 and 27, Judge Lord stated that he would not accept a settlement without the presence of three officers of Robins.[4] On February 28, 1984, counsel for both parties appeared before Judge Lord and Judge Robert G. Renner to advise the court that they had reached a settlement of the cases. During that proceeding there were discussions regarding a non-destruct order relating to discovery documents which had been previously issued by Judge Lord. Because Judge Lord's non-destruct order would terminate if the cases were settled, counsel for plaintiffs requested Judge Renner to take over enforcement of that order in the cases pending before him. The transcript of this proceeding makes clear that Judge Lord's involvement in the consolidated Dal-

---

1. Judge Lord traveled to Richmond, Virginia to preside over depositions, appointed two Special Masters to supervise the production of documents, and ordered Robins *sua sponte* to produce additional documents.

2. This court heard arguments on a petition for a writ of mandamus brought by the defendant challenging certain discovery orders entered by Judge Lord. On February 23, 1984, this court issued an order denying the writ. *In re A.H. Robins Co.*, 732 F.2d 161, No. 84–5028 (8th Cir. Feb. 23, 1984).

3. Judge Lord stated during the February 29, 1984 hearing that he was "not aware that [the Settlement Agreement] could possibly bind other plaintiffs in other jurisdictions before other Judges." Appendix at A–54. Plaintiffs' counsel, Mr. Larson of the Robins, Zelle law firm, agreed that other plaintiffs were not affected by the Settlement Agreement:

> It [the Settlement Agreement] does not at all in any way, shape or form, Your Honor, affect any rights whatsoever that any other plaintiffs' lawyer or any of their clients have,

and it is not intended to, by either party to that agreement.

> And I just want to make it very clear on the record that any terms of limitation would apply only to our clients and to nobody else. *Id.* at A–57.

4. Appearance of the Robins officers was mentioned in the February 28 hearing transcript. Although the Settlement Agreement does not refer to any appearance before Judge Lord of individual officers of Robins, plaintiffs' counsel stated to the court that finalization of the agreement required the presence of Mr. E.C. Robins, Jr., the CEO of the company, Dr. Carl Lunsford, and Mr. William Forrest, general counsel for the company. Counsel for plaintiff further stated that appearance of the Robins officers was "part of the settlement commitment that has been made by the defendant." However, Judge Lord stated that the reason "these people might appropriately be there is from my experience in having the lawyers come right up to the edge of a settlement and then announce they have it and then find it dissipated. I want the record to be clear on that." Appendix at A–77—A–78.

kon Shield litigation would end when the Settlement Agreement was signed by the Robins officers on the following day.[5] During the February 28 proceeding, counsel for plaintiffs inquired whether Judge Lord intended to review the Settlement Agreement. Judge Lord responded that he had no authority to interfere with the settlement and that reaching such an agreement was a private matter to be entrusted to the parties.[6]

On February 28, 1984, counsel for the respective parties executed the Settlement Agreement and Stipulations of Dismissal with Prejudice of the two Dalkon Shield cases remaining before Judge Lord, pursuant to Rule 41 of the Federal Rules of Civil Procedure. On February 29, counsel for both parties and the three Robins officers appeared before Judge Lord. As anticipated, the Robins officers signed the Settlement Agreement and the parties submitted to the court their Stipulations of Dismissal. Judge Lord ultimately entered orders of dismissal in the two cases confirming the stipulated dismissals.

The parties had not anticipated that Judge Lord would sign the Settlement Agreement, and had not provided a place on the document for the court to do so. At the February 29 hearing, plaintiffs' counsel stated that they had not anticipated the court would indicate its approval on the document:

THE COURT: I anticipate—is there a place on that document for my signature?

MR. LARSON: There is not at this time, Your Honor.

THE COURT: Is it anticipated that I will have to approve it?

MR. LARSON: It is not anticipated, Your Honor. But it is perfectly all right, if Your Honor would like to do so. Appendix at A–10.

Counsel for Robins repeatedly stated that Robins never intended for the court to be involved in the settlement and did not consider the effectiveness of the agreement to be contingent upon the court's approval. Appendix at A–27, A–31, A–48, A–57, A–58. Despite the parties' stated intentions that they had not anticipated court approval of the settlement, and despite Judge Lord's statement the previous day that "technically [he had no] authority to interfere with the settlement," Appendix at A–82, Judge Lord, at a later point during the hearing, threatened to withhold his approval and to "dissolve" the agreement, Appendix at A–27, A–58.[7]

After the Settlement Agreement was signed by the three Robins officers and was submitted to the court, Judge Lord distributed to counsel and the Robins officers copies of a document entitled "The Church's Claim on the Corporate Con-

5. JUDGE LORD: But you won't be coming back to me about the failure to produce or producing too much—

MR. LARSON: That's correct, Your Honor. We will not. We will be looking to Judge Renner and other Courts * * *.

Appendix at A–86.

JUDGE LORD: * * * does the stipulation provide that the masters shall cease their work?

MR. LARSON: Yes, it does, Your Honor * * *.

*Id.* at A–84.

6. JUDGE LORD: Here is my view of the matter. If this were a class action case or a case that had within it equity and, you know, injunctions and things of that kind, I would be very concerned about it. But even though I personally view all of these litigations as one, coming from one nexus of facts and one nexus of causation, I don't think that techni-

cally I have authority to interfere with the settlement that you have made * * *.

My disposition would be to entrust the drawing of that document to the adversary position. I'll approve what you bring before me tomorrow.

Appendix at A–82.

7. During Judge Lord's admonishment of the Robins officers, the following exchange took place:

MR. SOCHA: May the record reflect, Your Honor, that you are preparing to tear up the settlement agreement, if the witness, if Dr. Lunsford does not—

* * * * * *

THE COURT: I don't intend to tear up anything.

I'm just figurately [sic] stating does he want this thing approved or doesn't he?

Appendix at A–27.

science: Toward a Redefinition of Sin." The document contained a written speech which Judge Lord originally delivered to a meeting of clergy in November 1981. The speech presents a critical view of American corporations, including drug companies. Judge Lord instructed the officers to remain in the courtroom and to read the document while the court took a recess. After the recess, Judge Lord proceeded to read to the officers another speech which accused the officers of personal misconduct, of engaging in deceptive and dilatory litigation tactics, and of committing "transgressions" for which they should "confess" and "beg forgiveness." During his reprimand of the Robins officers, Judge Lord acknowledged that he had, in his own mind, concluded that plaintiffs' allegations concerning the Dalkon Shield were true and that he was therefore prejudiced against Robins. Appendix at A–30, A–45—A–46, A–47—A–48.

Counsel for Robins objected to Judge Lord's reprimand several times during the hearing. *See* Appendix at A–26, A–28, A–30—A–31. Counsel based his objections on the grounds that Judge Lord had exceeded his jurisdiction and abused his discretion. Counsel requested the court to terminate the proceedings, or to stay the proceedings while counsel sought relief from this court. Judge Lord allowed counsel to state his objections but otherwise ignored counsel's requests. After concluding his speech to the Robins officers, Judge Lord stated that he was "going to sign the [dismissal] order and approve the settlement and send the matter to Judge Renner on the cases which he has before him." Appendix at A–62.

Sometime after the Settlement Agreement was submitted to Judge Lord and before he returned the document to the parties' counsel, and without knowledge of the parties, Judge Lord affixed the following notation to the bottom of the agreement:

So Ordered.
/s/ Miles W. Lord
Miles W. Lord, Chief Judge
Dated: February 29, 1984

Appendix at A–73.

Counsel for Robins did not discover the notation until sometime after conclusion of the February 29 proceedings. The Settlement Agreement was not docketed nor made a part of the record in the district court and it is not contained in the files of the district court. Both parties possess a copy of the agreement which has on it the notation and signature of the district court. Also on February 29, 1984, the district court entered orders for judgments of dismissal with prejudice to be entered in each of the two instant cases, which confirmed the stipulated dismissals filed by the parties. Sometime after the February 29 proceeding, Judge Lord communicated with the masters by telephone, informing them that the parties had settled.

On March 30, 1984, Robins filed an appeal from the district court's entry of the notation "So Ordered" on the Settlement Agreement underlying the stipulated dismissals. Robins does not appeal the dismissal of these actions. Robins argues that the district court's action was a nullity because it lacked authority to approve or enter an order embodying the private Settlement Agreement. Although Robins claims the entry of the notation is void and that the notation did not convert the private Settlement Agreement into a court order, it argues that the existence of the phrase on the agreement creates sufficient legal prejudice to Robins that this court should exercise its appellate jurisdiction and strike the notation.

**Jurisdiction**

This case initially presents a difficult question regarding our appellate jurisdiction under 28 U.S.C. § 1291 (1982), which provides that the "courts of appeals * * * shall have jurisdiction of appeals from all final decisions of the district courts of the United States * * *."[8] The

---

**8.** Initially, Robins invoked this court's jurisdiction under 28 U.S.C. § 1291. In a subsequent brief, Robins asserted that in the alternative, we could treat the "So Ordered" notation as an injunction which is appealable under 28 U.S.C. § 1292(a)(1) (1982). Section 1292(a)(1) pro-

issue posed is whether the district court's entry of "So Ordered" and the court's signature on the parties' Settlement Agreement can be reviewed when the parties do not contest the court's entry of the judgments of dismissal with prejudice. Both parties retained a copy of the Settlement Agreement containing the district court's "So Ordered" notation and included a copy of the document in the record on appeal; however, the signed document was not docketed nor filed with the district court nor incorporated in the district court's order or judgments of dismissal. The district court's order and judgments of dismissal with prejudice are a matter of record in the court below. They in themselves do constitute final judgments under 28 U.S.C. § 1291;[9] however, Robins has chosen not to appeal these judgments of dismissal.

■■■ Having the final judgments of dismissal before us, the fundamental jurisdiction issue is whether there is a sufficient showing of prejudice so as to afford Robins a right to appeal from the judgments of dismissal entered by the district court. We think that, by attaching its approval to the parties' private Settlement Agreement which sets forth future discovery obliga-

tions of the parties, the district court attached a material condition to the judgments of dismissal. The district court's notation and the reasonable implications arising from it create sufficient legal prejudice so that the dismissals qualify as involuntary adverse judgments against Robins. As such, Robins has standing to appeal the dismissals and we may properly maintain jurisdiction of this case under Section 1291.[10] *See LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 603 (5th Cir.1976) (conditions imposed by trial court upon granting plaintiff's voluntary dismissal without prejudice under Fed.R.Civ.P. 41(a)(2) amounted to "legal prejudice" entitling plaintiff to appeal grant of dismissal in his favor).

The order was "adverse" to Robins in that Robins did not agree to or acquiesce in entry of the court's notation. Short of filing a formal request to set aside the order of dismissal, Robins made its position that court approval of the agreement was not necessary or anticipated quite clear by voicing its view at the February 28 and 29 hearings and by bringing this appeal.

■■■ We determine that, given the context in which the notation was added and

---

vides that "the courts of appeals shall have jurisdiction of appeals from: (1) Interlocutory orders of the district courts of the United States * * * or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions * * *." For the reasons stated in text, we are holding that the district court's action is appealable as a final decision under § 1291. We also believe, however, that it is the equivalent of an injunction and therefore appealable under § 1292(a)(1). In the Settlement Agreement Robins assumes certain obligations to preserve and produce documents. The agreement is, of course, enforceable as a contract. The addition of the words "So Ordered" and the district judge's signature converts these undertakings into one imposed by court order, enforceable if necessary by contempt proceedings. *See Smith v. Eggar*, 655 F.2d 181, 184–85 (9th Cir.1981).

9. *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 119 (9th Cir.1980); *Durham v. Florida E. Coast Ry.*, 385 F.2d 366 (5th Cir.1967); 5 J. Moore, J. Lucas & J. Wicker, *Moore's Federal Practice* ¶ 41.02[6] (2d ed. 1984); *cf. LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 603 (5th Cir. 1976) ("Where the trial court allows the plaintiff to dismiss his action without prejudice, the judg-

ment, of course, qualifies as a final judgment for purposes of appeal.").

10. Our concern regarding jurisdiction of this appeal also relates to the ripeness of Robins' claim. As plaintiffs point out, Robins' concern over the effect of the district court's notation would be more critical if it actually had breached the agreement and the district court had attempted to punish Robins for its breach by issuing a contempt citation. In such a factual setting, the district court's contempt order clearly would be appealable to this court. *See United States v. Ryan*, 402 U.S. 530, 532, 91 S.Ct. 1580, 1581, 29 L.Ed.2d 85 (1971); *Cobbledick v. United States*, 309 U.S. 323, 327, 60 S.Ct. 540, 542, 84 L.Ed. 783 (1940); *United States Steel Corp. v. Fraternal Ass'n of Steel Haulers*, 601 F.2d 1269, 1273 (3d Cir.1979); *Duffy v. Dier*, 465 F.2d 416, 417 & n. 1 (8th Cir.1972). We find, however, that because the court's notation and entry of dismissal orders "signaled the close of the underlying litigation," *see* Amicus Curiae Brief of Chief Judge Miles W. Lord at 8, we need not await any further action by the district court before considering this appeal.

the court's use of the term of art "So Ordered," the intended effect of the notation was to command compliance with the terms of the agreement. A fair inference from such a command is that the court might exercise its powers, including its contempt power, in order to enforce its command and punish noncompliance. As such, the notation poses a significant threat to Robins. *See Smith v. Eggar*, 655 F.2d 181, 184–85 (9th Cir.1981) (order enforcing private settlement agreement was sufficiently injunctive in nature to justify exercise of appellate jurisdiction under 28 U.S.C. § 1292(a)(1), the interlocutory appeal statute). We hold that the district court's gratuitous notation is sufficiently prejudicial to Robins to entitle Robins to appeal the judgments of dismissal which it sought.[11]

### Approval of Settlement Agreement

█ Before considering whether the court erred in entering the "So Ordered" notation on the Settlement Agreement, we address plaintiffs' characterization of the proceedings below. Plaintiffs argue that Judge Lord's involvement in the consolidated Dalkon Shield cases authorized him to assure enforcement of the discovery provisions of the agreement as they affected other cases. Plaintiffs point to the large number of Dalkon Shield cases in the Minnesota court system, and to Judge Lord's interest, as Chief Judge of the District, in efficient judicial administration of this vast amount of pending litigation. In some circumstances these factors might have merit, but here, Judge Lord was not acting in a supervisory or administrative capacity when he entered the notation on the parties' Settlement Agreement. He was signing an order in specific pending cases. All matters relating to the future processing of other Dalkon Shield litigation had been

transferred to Judge Renner the day before the notation was added. Judge Renner had agreed to take jurisdiction over the non-destruct order previously issued by Judge Lord. In short, Judge Lord's role in the consolidated Dalkon Shield cases had ended. The chief judge of a district court, merely by virtue of his position, has no authority to enter orders in cases pending before other judges of the district. In any event, we find that, at the time Judge Lord approved the Settlement Agreement, exercise of any supervisory authority he might have had was improper because Judge Lord already had renounced his supervisory capacity by stating that he was prejudiced in these cases. Appendix at A–48. Thus, approval of the parties' agreement cannot be justified on the basis of Judge Lord's supervisory authority over the Dalkon Shield litigation. Plaintiffs' assertion that the court's notation was necessary to terminate the activities of the Special Masters also is contrary to the facts. Counsel for Robins explained at oral argument that Judge Lord communicated to the masters by telephone that the parties had settled sometime after the February 29 proceeding. The district court apparently terminated the masters' activities in a less formal manner than by court order.

█ We also reject, for the purpose of reviewing Judge Lord's approval of the agreement, plaintiffs' characterization of the consolidated proceeding as a quasi-class action. The instant litigation may indeed bear many of the characteristics of a class action, however, the record is unequivocal that neither the parties nor the district court regarded the agreement as binding other plaintiffs. The Settlement Agreement was a matter of private contract between Robins and counsel Robins, Zelle on

---

11. In the alternative, we hold that Robins' appeal from the district court's entry of the "So Ordered" notation on the parties' private Settlement Agreement may be considered as a petition for a writ of mandamus. *See Cord v. Smith*, 338 F.2d 516, 521 (9th Cir.1964) (proceedings treated as petition under All Writs Act, 28 U.S.C. § 1651 (1982), where party attempts to appeal from unappealable order and circum-

stances justify such treatment); *United States v. Briggs*, 514 F.2d 794, 808 & n. 27 (5th Cir.1975). Mandamus is particularly appropriate in these circumstances in which the claim is that an inferior court has acted outside the scope of its power. *See State Highway Comm'n v. Volpe*, 479 F.2d 1099, 1104 n. 6 (8th Cir.1973), *modifying* 347 F.Supp. 950 (W.D.Mo.1972).

behalf of several named individuals, and is enforceable only by those parties. Only two of the named plaintiffs had cases pending before Judge Lord. This was not one of the special situations in which the trial court is required by statute or rule to approve a settlement. *Cf. United States v. City of Miami, Florida,* 614 F.2d 1322, 1330 & n. 16 (5th Cir.1980), *modified on rehearing,* 664 F.2d 435 (5th Cir.1981) (four examples of such "special situations" are proposed class action settlements, proposed shareholder derivative suit settlements, proposed compromises of claims in bankruptcy court, and consent decrees in antitrust suits brought by the United States).

■ In ordinary litigation, that is, lawsuits between private parties, courts recognize that settlement of the dispute is solely in the hands of the parties. In *City of Miami,* the Fifth Circuit described the settlement process in litigation between private parties as follows:

If the parties can agree to terms, they are free to settle the litigation at any time, and the court need not and should not get involved. * * * "the traditional view is that the judge merely resolves issues submitted to him by the parties ... and stands indifferent when the parties, for whatever reason commends itself to them, choose to settle a litigation."

614 F.2d at 1330 (quoting Judge Wyzanski in *Heddendorf v. Goldfine,* 167 F.Supp. 915, 926 (D.Mass.1958)); *see also United States v. Louisiana,* 527 F.Supp. 509, 512 (E.D.La.1981) (a trial court ordinarily plays little or no part in overseeing the settlement of a lawsuit); *Georgevich v. Strauss,* 96 F.R.D. 192, 197 (M.D.Pa.1982), *appeal dismissed,* 722 F.2d 731 (3d Cir.1983). Courts not only frown on interference by trial judges in parties' settlement negotiations, but also renounce the practice of approving parties' settlement agreements. *See City of Miami,* 614 F.2d at 1330; *Le-*

*vinson v. Maison Grande, Inc.,* 553 F.Supp. 350, 352 (S.D.Fla.1982).

In *City of Miami,* the Fifth Circuit recognized that procedurally, parties can prevent a court from becoming involved in the settlement process by agreeing that plaintiff shall dismiss the lawsuit by stipulation. 614 F.2d at 1330. The court pointed out that Rule 41 of the Federal Rules of Civil Procedure allows a lawsuit to be dismissed at any time by the consent of all parties. *Id.* at 1330 n. 15.[12] Caselaw concerning stipulated dismissals under Rule 41(a)(1)(ii) is clear that the entry of such a stipulation of dismissal is effective automatically and does not require judicial approval. *First National Bank v. Marine City, Inc.,* 411 F.2d 674, 677 (3d Cir.1969); 5 J. Moore, J. Lucas & J. Wicker, *Moore's Federal Practice* ¶ 41.02[2], .02[5] (2d ed. 1984); *cf. Merit Insurance Co. v. Leatherby Insurance Co.,* 581 F.2d 137, 141 (7th Cir.1978) (voluntary dismissal under Rule 41(a)(1)(i) does not require court approval).

■ Under the above legal principles, we determine that Judge Lord improperly interfered in the parties' private agreement by adding the "So Ordered" notation and by signing the Settlement Agreement. The record includes no evidence indicating that the parties mutually agreed to court approval of the document or to the court's retention of jurisdiction over Robins. In fact, the record indicates the opposite: that the parties did not anticipate court approval and that the orders of dismissal "signaled the close of the underlying litigation" before Judge Lord. Thus, the effect of Judge Lord's notation was an attempt to convert the document into something the parties neither anticipated nor negotiated. Such conduct by the district court constitutes interference in the parties' settlement. Judge Lord failed to "stand[ ] indifferent when the parties, for whatever rea-

---

**12.** Rule 41 provides in relevant part:

**(a) Voluntary Dismissal: Effect Thereof.**

(1) *By Plaintiff; by Stipulation.* Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action

may be dismissed by the plaintiff without order of court * * * (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. * * *

son \* \* \*, [decided] to settle [the] litigation." *Heddendorf,* 167 F.Supp. at 926.

Moreover, Judge Lord effectively deprived the parties of their unconditional right to a Rule 41(a)(1)(ii) dismissal by stipulation. By entering the notation on the parties' agreement without their knowledge or consent, the district court, in effect, imposed a material condition on the parties' right to a stipulated dismissal— that the private Settlement Agreement be approved by court order, enforceable by contempt. Imposition of such a condition directly conflicts with the clear and unambiguous language of Rule 41(a)(1) which contains no exceptions that call for the exercise of judicial discretion by any court. We hold that the district court's entry of the notation on the parties' private agreement was improper.[13]

**Denial of Due Process and Judicial Bias.**

We now address Judge Lord's comments to the Robins officers, E. Claiborne Robins, Jr., William A. Forrest, Jr., and Dr. Carl D. Lunsford, during the February 29 district court proceeding. We consider the matter in this appeal even though Robins failed to raise the issue initially. Our decision to reach the issue rests on several grounds. First, we note that, on our request, the matter has now been fully briefed and argued by the parties as well as by the Robins officers and Judge Lord, who appear in these proceedings as amici. The pertinent record relating to the district court's comments has been fully developed. Judge Lord's comments arise out of the same judicial proceeding as the matter asserted in Robins' Notice of Appeal—the alleged impropriety of the court's "So Ordered" notation. Indeed, the district court's remarks to the three officers of Robins apparently reveal the reasons for the court's desire to add the notation "So Ordered," so an appeal challenging this notation necessarily involves consideration of the propriety of these remarks. In addition, the propriety of the court's comments is at the heart of a disciplinary proceeding commenced by Robins and its officers against Judge Lord under the Judicial Conduct and Disability Act of 1980, 28 U.S.C. § 372 (1982), now pending before the Judicial Council of this circuit. It is far more desirable for this issue to be addressed in the normal appellate process than in the extraordinary context of a disciplinary proceeding.

In *Wright v. Newman,* 735 F.2d 1073, 1076 (8th Cir.1984), we recognized our general rule of not considering arguments on appeal that were not advanced in the proceedings below. In that case, however, we found it proper to exercise our discretion in favor of reaching an issue that had not been raised before the district court. In our view, the instant appeal presents a

---

**13.** Plaintiffs provide ample authority for the proposition that the district court retains the inherent power to enforce settlement agreements entered into in settlement of litigation pending before it. *See Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1371 (6th Cir.), *cert. denied,* 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976); *cf. Fairfax Countywide Citizens Ass'n v. County of Fairfax, Va.,* 571 F.2d 1299, 1303 (4th Cir.), *cert. denied,* 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978) (court has power to enforce settlement agreement if agreement has been approved and incorporated into court order, or if independent ground of federal jurisdiction exists). We do not dispute this principle; however, we do not agree with plaintiffs' statement that "[i]n view of plaintiffs' ability to enforce the settlement agreement summarily, no purpose can be served by removing the notation from the settlement agreement." Brief of Appellees at 10. We find no authority for the use of

contempt proceedings by the district court to enforce a court-approved compromise and settlement agreement, the terms of which are not incorporated in a court order, decree, or judgment. *See* Annot., 84 A.L.R.3d 1047, 1049–50 (1978). Thus, removal of the court's notation assures Robins not that the agreement cannot be enforced, because it can, but that the court cannot use its contempt powers to enforce a court order which merely acknowledges and approves a settlement, without specifically commanding or enjoining any particular conduct. Moreover, in relying on the district court's power to enforce settlement agreements, plaintiffs overlook the fact that no breach of the agreement had yet occurred and any conduct of the district court "enforcing" the agreement was therefore premature. Thus, the court's notation cannot be justified on the ground that the district court has the power to enforce the agreement even without the "So Ordered" notation.

more compelling case for reaching the additional issue because the record indicates that counsel for Robins voiced several objections to Judge Lord's comments during the February 29 proceeding. Finally, we think this court has the authority to consider *sua sponte* the impropriety of the district court's comments under our general supervisory power over judicial proceedings in federal courts located within this circuit. *See Reserve Mining Co. v. Lord,* 529 F.2d 181, 188 (8th Cir.1976); 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 110.25[1] (2d ed. 1983). We therefore proceed to the merits of the due process claim.

 Robins and its officers assert that Judge Lord's reprimand violated their due process rights under the fifth amendment by depriving them of liberty and property without due process of law. We agree that Judge Lord's comments from the bench during the February 29 proceeding sufficiently implicated the constitutionally-protected liberty interests of the three officers, and property interests of Robins, such that they were entitled to notice and an opportunity to be heard by an impartial tribunal. The reprimand constituted an infringement on the officers' liberty interests because it was a governmental attack on their good name, reputation, honor, and

community standing. *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971); *Sims v. Fox,* 505 F.2d 857, 862 (5th Cir.1974), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975).[14] Moreover, the officers' personal liberty interests were infringed when Judge Lord directed each officer to appear in his court and to remain and read his speeches, even though the officers were not parties to the litigation pending before Judge Lord.[15] These three officers received no adequate notice of the nature of the informal and personal charges Judge Lord issued from the bench on February 29. Such intimidation of private citizens who are not parties to proceedings before the district court is antithetical to our notions of fundamental fairness and the proper functioning of our judicial system. These procedures constitute a clear violation of the three officers' due process rights.

 As a party to the litigation, Robins was entitled to due process, the essence of which is a fair trial before a tribunal free from bias or prejudice. *In re Murchison,* 349 U.S. 133, 136–37, 75 S.Ct. 623, 625–26, 99 L.Ed. 942 (1955); *United States v. Sciuto,* 531 F.2d 842, 845 (7th Cir.1976).[16] The record is clear that, at the

---

**14.** Judge Lord accused each officer of personal misconduct:

> THE COURT: * * *
>
> You, Dr. Lunsford, as director of the company's most sensitive and important subdivision, the medical division, have violated every ethical precept to which ever [sic] doctor under your supervision must pledge * * *.
>
> You, Mr. Forrest, are a lawyer who, upon finding his client in trouble, should counsel and guide him along a course which will comport with the legal and moral and ethical principles which must bind us all.
>
> You have not brought honor to your profession, Mr. Forrest.

Appendix at A–33—A–34.

> Mr. Robins, Mr. Forrest, Dr. Lunsford, you have not been rehabilitated by the punitive damage awards that have been made so far. * * *
>
> Under your direction your company has in fact continued to allow women, tens of thousands of them, to wear this device, a deadly depth charge in their wombs, ready to explode at any time.

*Id.* at A–38.

**15.** Mr. Larson, counsel for plaintiffs, asserts that the presence of the three officers in court on February 29 was a condition of settlement. While that may be true, the record indicates that their presence before Judge Lord was mandated by the district court as well:

> JUDGE LORD: Just a minute. The one thing, to the extent that *I suggested* these people might appropriately be there is from my experience in having the lawyers come right up to the edge of a settlement and then announce they have it and then find it dissipated. I want the record to be clear on that.

Appendix at A–78 (emphasis added).

**16.** Robins was entitled to due process not only as a litigant under the jurisdiction of the district court, but also because its property interests were implicated by Judge Lord's public reprimand. The reprimand has been used against Robins in other Dalkon Shield cases across the country, resulting in potential prejudice to Rob-

time he issued the reprimand, Judge Lord had decided the merits of the underlying dispute against Robins, even though there had been no trial. Without giving the parties before him an opportunity to defend themselves, Judge Lord issued his condemnation of the three Robins officers. Judge Lord stated that he believed the truth of plaintiffs' allegations, adding that he had become an advocate for plaintiffs and that he was, in fact, prejudiced.[17] Judge Lord contends that the basis for his reprimand was not extrajudicial, as is normally required for a finding of bias; rather, the reprimand was based on the record before him which "encompassed the records of five prior Dalkon Shield trials in the District of Minnesota, as well as new depositions taken of company employees as part of the consolidated cases before Judge Lord." A finding of bias, however, is not precluded merely because the judge's remarks were made in a judicial context. *Parliament Insurance Co. v. Hanson*, 676 F.2d 1069, 1075 (5th Cir.1982); *Whitehurst v. Wright*, 592 F.2d 834, 837 (5th Cir.1979). Here, the judge made his comments without a trial and thus without hearing both sides of the case. Those comments in such a context exhibit a pervasive bias and prejudice as to deprive Robins of its due process right to a hearing before an impartial judge. *See Davis v. Board of School Commissioners*, 517 F.2d 1044, 1051 (5th Cir. 1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). When a judge passes judgment on parties before him

without hearing all of the evidence and without a trial, we deem such comments highly injudicious.

Judge Lord attempts to justify his remarks to the three officers as a permissible comment on pending litigation. Indeed, many federal decisions recognize the power of judges, within reasonable limits, to comment on the evidence and to express fair opinions. *See United States v. Womack*, 454 F.2d 1337, 1342 (5th Cir.1972), *cert. denied*, 414 U.S. 1025, 94 S.Ct. 450, 38 L.Ed.2d 316 (1973). In this instance, however, we think Judge Lord crossed the line separating permissible judicial comments from impermissible public accusations against a litigant, Robins, and nonlitigants, Messrs. Robins, Forrest, and Lunsford. As this court has stated in other litigation involving Judge Lord:

> [He] seems to have shed the robe of the judge and to have assumed the mantle of the advocate. The court thus becomes lawyer, witness and judge in the same proceeding, and abandons the greatest virtue of a fair and conscientious judge—impartiality.

A judge best serves the administration of justice by remaining detached from the conflict between the parties. As Justice McKenna stated long ago, "[T]ribunals of the country shall not only be impartial in the controversies submitted to them but shall give assurance that they are impartial...." *Berger v. Unit-*

---

ins' litigation posture in those cases. The adverse publicity Robins has received from the public reprimand could conceivably have caused Robins other forms of property damage as well.

**17.** MR. SOCHA: * * *

And it is my judgment that you have basically this morning made accusations against these men and their integrity—

THE COURT: No accusations. I made some profound judgments.

Appendix at A–30.

THE COURT: * * *

So while the governmental agencies are set up to protect the public, there is evidence here that you didn't tell the truth to the governmental agencies.

I believe that evidence, I've made it—I've made a judgment on it.

Appendix at A–45—A–46.

MR. SOCHA: Your Honor, on behalf of my client, I object to the Court's remarks.

It is apparent to me, Your Honor, with all respect, that you have become an advocate for the plaintiffs' position—

THE COURT: I certainly have.

* * * I have concluded that the plaintiffs are right and that the things I say are based— they are my judgment based on the record.

* * * * * *

You don't have to argue that I am prejudiced at this point. I am.

Appendix at A–47—A–48.

*ed States*, 255 U.S. 22, 35–36 [41 S.Ct. 230, 234, 65 L.Ed. 481] (1921). When the judge joins sides, the public as well as the litigants become overawed, frightened and confused.

*Reserve Mining Co.*, 529 F.2d at 185–86.

█ Judge Lord asserts his reprimand was intended as a "sanction" for discovery abuse and a "censure" of the "tactic of A.H. Robins of insulating its chief operating officers from any knowledge as to the widespread disability and death caused by the company's product." He also claims the reprimand was directed at the three officers' "demeanor of undisguised disdain for the Court." We find these proffered rationales for the court's reprimand unpersuasive. As counsel for Robins points out, the bulk of the reprimand reflects Judge Lord's views on the merits of the underlying litigation, a personal attack on the officers, and his assertions that the Dalkon Shield caused catastrophic damage. A relatively small part of the reprimand dealt with alleged discovery abuse and management of the litigation by Robins. Moreover, the record contains no evidence of conduct constituting an affront to the district court on the part of these officers. If, in fact, Robins or its officers did engage in discovery abuse, the district court had available to it procedures to enforce its discovery orders and to punish noncompliance. Such procedures incorporate the due process protections of notice and a hearing before any sanction may be imposed. If the district court had decided to punish Robins for abusive litigation practices, it was bound to do so by the judicial procedures established for that purpose. *See* Fed.R.Civ.P. 37 (sanctions for discovery).

█ We do not evaluate the truth or falsity of any allegations made during this litigation. This is no more the proper forum for that determination than the district court was when the Settlement Agreement was presented to Judge Lord. The trial court was not sitting as the factfinder in these cases during the subject proceedings. Although Judge Lord had participated in a limited amount of discovery, the lawsuit was still in the pretrial phase, Judge Lord had not yet held an evidentiary hearing, and Robins had not yet had an opportunity to challenge plaintiffs' allegations by cross-examination. While Judge Lord claims he had formed an opinion based on the record before him, this judgment was premature. Judge Lord's action ordinarily would not be subject to review because no trial had been held. Once Judge Lord lost his neutrality, he was obligated to refrain from further action in a judicial capacity in the cases before him.[18]

█ We speak now in our supervisory capacity over the district courts. At the time of the February 29 proceedings, there were pending in the federal district courts in Minnesota as well as in the Minnesota state court system, many other cases brought against Robins based on similar contentions of causation and injury. It should have been obvious to Judge Lord that any comments he made might be publicized (defense counsel asserts that Judge Lord invited the press to attend the proceedings) and therefore could prejudice the orderly trial of other pending cases. Such pretrial publicity could materially affect the ability of the parties to solicit fair jurors, thereby impairing the orderly administration of trial dockets in both federal and state courts. Under these circumstances, we must disapprove of Judge Lord's comments. If proof exists to show Robins has been derelict in its corporate management by producing a defective product, Robins

---

**18.** Our comments are not intended in any way to inhibit a trial judge in a proper proceeding to comment fairly on evidence presented in an adversary trial. In criminal cases a trial judge may properly condemn criminal conduct of a convicted felon in sentencing proceedings. The proceeding before Judge Lord, however, is not analogous to proceedings involving sentencing of convicted criminals. In fact, even in a sentencing proceeding a convicted person is allowed the opportunity to contest the truth of any facts relied on by the sentencing authority.

was still entitled to submit its defense in individual cases before a fair and impartial jury or tribunal. A trial judge's comments adverse to a party before a trial commences can easily prejudice the minds of jurors and other judges.[19] We emphasize that the proceedings before Judge Lord were not sufficient for a fair and unbiased judgment to be made. Many people will champion what Judge Lord has done in the conduct of the Dalkon Shield litigation because of their deep convictions about the substantive issues involved. Many individuals and their counsel who have brought claims against Robins obviously have reason to applaud a trial judge's condemnation of the adversary. However, these people overlook the proper role of a judge in the administration of justice.[20] The judicial branch of the government is not and should never become an advocate for private causes. A federal district judge holds one of the most powerful and respected offices in this country.[21] The judge exercises a power over a person's life, liberty, and property, legally restrained only by the review processes of a court of appeals and the Supreme Court of the United States.

Accordingly, we find the district court erred by entering the "So Ordered" notation on the parties' private Settlement Agreement and by reprimanding the three corporate officers and Robins during the February 29 hearing. We therefore direct that Judge Lord's "So Ordered" notation and his condemnation and reprimand be stricken from the district court's records in this case. They are to have no legal effect.

It is so ordered.

19. *See United States v. Bland,* 697 F.2d 262, 265–66 (8th Cir.1983) ("A judge's slightest indication that he favors the government's case can have an immeasurable effect upon a jury.").

20. Justice Frankfurter described the judicial function in the following manner:

To practice the requisite detachment and to achieve sufficient objectivity no doubt demands of judges the habit of self-discipline and self-criticism, incertitude that one's own views are incontestable and alert tolerance toward views not shared. But these are precisely the presuppositions of our judicial pro-

cess. They are precisely the qualities society has a right to expect from those entrusted with * * * judicial power.

*Rochin v. California,* 342 U.S. 165, 171–72, 72 S.Ct. 205, 209–10, 96 L.Ed. 183 (1952).

21. Isabella:
Oh, it is excellent
To have a giant's strength, but it is tyrannous
To use it like a giant.

Shakespeare, *Measure For Measure,* Act II, sc. ii (G.B. Harrison ed. 1968).