The judgment of the district court will be affirmed.

**In re Petition of David F. LAUER.**

**In re Petition of Frank Robert STRANG.**

**Nos. 84–012, 84–014.**

The Judicial Council of the Eighth Circuit.

Jan. 24, 1985.

---

LAY, Chief Judge.

This matter comes before me, as Chief Judge, based upon verified complaints filed by two citizens relating to alleged misconduct arising in part from comments of a federal district judge during the sentencing of two anti-war protesters. The defendants freely admitted to damage of three military computers built by Sperry Corporation for use in Trident II missile systems. These verified complaints are representative of numerous letters which have been sent to me, as Chief Judge, by other citizens with the same general complaint.[1] One of the allegations of these complaints relates to the length of sentence given by the judge to the two protesters. If the complaints singularly focused on the judgment of sentence I would be required to dismiss them as being outside the jurisdiction of the Judicial Conduct and Disability Act of 1980, 28 U.S.C. § 372(c)(1) (1982), because they directly relate to the merits of a judicial proceeding. Sentencing of a defendant in a criminal case is controlled by the range of statutory penalty set forth by Congress and lies within the exclusive discretion of a district judge.[2] To the extent that the complaints relate to the actual

1. In view of the fact that these letters are not verified or filed as complaints with the Judicial Council I need not take official action on them. I mention them only as supplemental statements made by other lay citizens who express concerns similar to those expressed in the verified complaints.

2. In the past, a district court's sentence has been subject to a deferential review by the court of appeals. *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 3009 n. 16, 77 L.Ed.2d 637 (1983) ("Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness

of a particular sentence; * * * the appellate court decides only whether the sentence under review is within constitutional limits. In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate."). The standard for appellate review of sentencing decisions will change, however, under the sentencing reform provisions of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 98 Stat. 2011, enacted October 12, 1984, effective November 1, 1986.

sentence (in this case, six months probation) I must dismiss these allegations as not within the jurisdiction of the Act.

One verified complaint relating to the *Sperry* case states as follows:

> On 11–8–84 [the federal district judge] sentenced J. LaForge & B. Katt to six months probation for their crime of illegal entry and destroying $34,000 of U.S. Government property at Sperry in Egan Mn [sic].
>
> [The federal district judge] admittedly based his unbelievable leniency upon the fact that Sperry had overcharged the U.S. Government in the past. This outrageous behavior undermines our courts and the peoples [sic] confidence in our judicial system. His use of his office and our court for his personal feelings, is prejudicial to the effective adminestration [sic] of the courts.

Another verified complaint criticized the judge's comments made at the sentencing hearing and, more specifically, the judge's statement: "What is so sacred about a bomb, so romantic about a missile? Why do we condemn and hang individual killers, while extolling the virtues of warmongers." [3] This complaint also cites the same trial judge's actions in *Reserve Mining Co. v. Lord,* 529 F.2d 181 (8th Cir.1976), in *Gardiner v. A.H. Robins Co.,* 747 F.2d 1180 (8th Cir.1984), and to his comments on a national television broadcast of *60 Minutes.* The complaint concludes that his conduct is prejudicial to the effective administration of the courts.

Under the Judicial Conduct and Disability Act, if a Chief Judge finds that allegations of misconduct fall within the scope of the Act, it is the statutory obligation of the Chief Judge to appoint an investigative committee consisting of himself and equal numbers of circuit and district judges of the circuit. 28 U.S.C. § 372(c)(4). The committee is to make its report to the Judicial Council, which in this circuit is composed of the nine active judges of the court of appeals and five district judges. The Judicial Council determines whether any action should be taken against the judicial officer based upon the complaint, and then is authorized to take such appropriate action.

■ In the present case the question I must initially resolve is whether the alleged misconduct lies outside the scope of the Act. The Act authorizes dismissal of the complaint if the claim (a) is frivolous or (b) directly relates to the substantive or procedural merits of a decision. 28 U.S.C. § 372(c)(3). In reviewing the transcript of the sentencing proceeding of November 11, 1984, I have determined that the trial judge's comments fall outside the scope of the Act. The judge's comments were made during a sentencing proceeding in his capacity as a judicial officer, and they were related to the merits and reasons for the sentence imposed. As such, they cannot serve as the basis for a disciplinary proceeding under the Act.

Based upon the letters received, I note that many citizens have disagreed vigorously with the comments of the district judge. On the other hand, this court takes judicial notice of numerous letters appearing in the metropolitan newspapers of Minneapolis and St. Paul, in which other citizens agree with the district court's comments. My decision to dismiss these claims is not based upon philosophical agreement or disagreement with the judge's comments. Rather, my decision is controlled by the fact that the trial judge's comments, rightly or wrongly expressed, were rendered as part of a judicial proceeding and were directly related to the sentence given. In this sense, at least in my judgment, any comments made by a trial judge during a sentencing proceeding generally lie outside of the Act in question.[4]

---

**3.** In processing these complaints I have considered the entire comments of the trial judge made at the time of the sentencing proceeding.

**4.** Under the terms of the Act, my decision not to refer the complaints to the Judicial Council is subject to appeal to the fifteen member Council itself. *See* 28 U.S.C. § 372(c)(10).

█ While many people may agree or disagree with the sentence and the judge's reasons for imposing the sentence, it must be remembered that a judge has the authority and the power to be wrong as well as to be right. A federal judge possesses this power by virtue of the independence protections guaranteed by Article III of the United States Constitution, and such independence should not be threatened by the congressional Act in question. The Judicial Conduct and Disability Act should not be invoked so as to chill the independence of a trial judge in a judicial proceeding. A trial judge should not fear that because of comments he or she makes from the bench, which in good faith the judge feels are related to the proceeding before the court, he or she ultimately may be subject to a disciplinary sanction by the Judicial Council. Disenchanted litigants or other citizens should not be able to attempt to influence a federal judge about a judicial decision through the threat of disciplinary sanction. This is clearly not what Congress intended in passing the Act. The Act itself recognizes the need to safeguard the federal judiciary's independence by specifically excepting from its scope rulings relating to the merits of a proceeding.

Although federal judges enjoy the independence accorded them under the Constitution, every judge should at the same time be keenly aware that the independence of the federal judicial branch depend in large part on public confidence in the integrity and impartiality of the judiciary.[5] In performing the duties of a judicial officer, it is incumbent upon a federal judge never to be swayed by outside partisan interests or private causes. These are principles of public accountability, which guide all federal judges, because they provide the basis for public trust in the judicial branch of government. When a judge fails to display objectivity and impartiality in a given case, the judge not only creates prejudice in the litigation before the court, but he or she also sacrifices the public trust in the neutrality of the judiciary. While the former can be corrected through the normal channels of appellate review, the latter damage may be irreparable. If the public loses its confidence in the fairness of the judicial system, public acceptance of the rule of law is weakened. With these comments regarding the interaction of judicial independence and public accountability, I proceed to the remaining claims contained in the complaints before me.

█ The second complaint contains broad allegations of bias by the judge in question. It condemns the trial judge's conduct in the *Reserve Mining* case in which the judge manifested extreme prejudice against the Reserve Mining Company. The difficulty in reviewing this claim is that it directly relates to the procedural handling of litigation in which this court removed the trial judge for bias. *See Reserve Mining Co.*, 529 F.2d at 188. Since the complaint directly relates to the procedural processing of an actual case previously ruled upon, I find appropriate corrective action has been taken. Similarly, the court of appeals has ruled on the judge's conduct in the *A.H. Robins* litigation. *Gardiner v. A.H. Robins Co.*, 747 F.2d 1180 (8th Cir. 1984). On December 26, 1984, the judicial complaint filed against the judge for conduct in the *A.H. Robins* proceeding was ruled moot by the Judicial Council. Thus, because appropriate corrective action has been taken in these cases by the court of appeals through regular channels of appellate review, I must dismiss this claim as well.

█ The complaint at issue also states that the trial judge was guilty of misconduct because of the judge's comments in the *60 Minutes* interview which aired in November 1984. I assume that the complainant in part refers to the judge's re-

---

**5.** As Justice Frankfurter observed in *Rochin v. California,* 342 U.S. 165, 171–72, 72 S.Ct. 205, 209–10, 96 L.Ed. 183 (1952):

> To practice the requisite detachment and to achieve sufficient objectivity no doubt demands of judges the habit of self-discipline and self-criticism, incertitude that one's own views are incontestable and alert tolerance toward views not shared. But these are precisely the presuppositions of our judicial process. They are precisely the qualities society has a right to expect from those entrusted with * * * judicial power.

marks concerning other judicial and governmental officers. Any remark disrespectful to a court or another judge reflects on the entire judiciary and serves to create public concern over the integrity of individual judges. In another sense, however, I must weigh the fact that the comments made on *60 Minutes* also may fairly be construed to reflect the judge's general disagreement with those mentioned. I do not feel the generalized charge concerning the judge's statements on *60 Minutes* is of sufficient specificity to refer to the Judicial Council for further action. I therefore dismiss this charge as being too vague and general.

The last charge to be considered is that the trial judge's overall conduct has been prejudicial to the expeditious administration of the business of the courts. This charge incorporates all of the above specified cases in which corrective action has been taken. For the reasons set forth I therefore dismiss the verified complaints and decline further reference of the complaints to the Judicial Council.