951 F.2d 363
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald D. GROBMAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ernest TREVINO, Defendant-Appellant.
 Nos. 90-10292, 90-10529.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 6, 1991.*
Decided Dec. 16, 1991.
 
 Before FLETCHER, WIGGINS and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Donald Grobman and Ernest Trevino were both convicted of the same conspiracy to manufacture and distribute methamphetamine. Ernest Trevino appeals from his conviction for conspiracy to manufacture and distribute methamphetamine and aiding and abetting the manufacture of methamphetamine. Donald Grobman appeals his conviction and his sentence for conspiracy to possess with intent to distribute methamphetamine and aiding and abetting the manufacture of methamphetamine.
 
 
 3
 On October 3, 1988, agents from federal and state law enforcement agencies found and searched, pursuant to a search warrant, the largest methamphetamine laboratory ever discovered in Sacramento. At the laboratory located on Hedge Avenue, they found two pounds of methamphetamine, the chemical to manufacture more, and evidence linking Grobman and Trevino to the lab operation. Laboratory glassware at the site had Grobman's fingerprints on it.
 
 
 4
 Trevino's involvement was further established by his purchases of methamphetamine precursor chemicals from a police informant. There was also evidence linking him to the delivery of the chemicals to the Hedge Avenue lab, as several of the containers were marked before sale to him and then identified at the lab.
 
 
 5
 Officers searched Trevino's residence in Richmond and found, among other things, an address book which contained the police informant's beeper number and the phone number of Jerry Andrews, identified as the head of the Hedge Avenue laboratory.
 
 
 6
 Additional investigators executed a search warrant at Grobman's residence in Sacramento, which Grobman rented from Andrews. During the search, agents found methamphetamine in several places. They also found an Ohaus triple beam scale with several glassine baggies, a box with several pieces of lab glassware, and a narcotics ledger in Grobman's handwriting. He admitted that he used and sold methamphetamine. The detached barn at Grobman's residence smelled like methamphetamine or its precursors. There were many similarities--things consistent with the production of methamphetamine--between the barn and the Hedge Avenue laboratory.
 
 
 7
 II. Sufficiency of Evidence to Support Grobman's Conviction
 
 
 8
 There is sufficient evidence to support a conviction if, reviewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Adler, 862 F.2d 210, 214 (9th Cir.1988) (citation omitted). Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction. United States v. Hernandez, 876 F.2d 774, 777 (9th Cir.1989), cert. denied, 493 U.S. 863 (1989).
 
 
 9
 To prove conspiracy, the government had to show: an agreement to accomplish an illegal objective, an overt act in furtherance of that objective, and intent. United States v. Thomas, 887 F.2d 1341, 1347 (9th Cir.1989). The government does not need to show a direct contact or explicit agreement among the coconspirators. Additionally, "[o]nce a conspiracy exists, evidence establishing beyond a reasonable doubt defendant's connection with the conspiracy, even though the connection is slight, is sufficient to convict [the] defendant of knowing participation in the conspiracy." United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987) (citation omitted).
 
 
 10
 Grobman does not dispute that a conspiracy existed. He simply denies knowledge or participation on his part. His fingerprints on the glassware and water-jacketed condensing column found in the lab on October 3, 1988, contradict his assertion. Grobman lied in court as to the origin of his fingerprints on the glass. He testified that he removed some glassware from the residence he rented from Andrews when he moved in in January of 1989--several month after his fingerprints were already found on the glassware. The jury could reasonably conclude from the close similarity in the set up of the barn and the Hedge Avenue laboratory that Grobman's barn was set up to produce methamphetamine and that Grobman knew of and participated in the conspiracy.
 
 
 11
 The overt act requirement may be satisfied by an inference made from Grobman's fingerprints on the glassware that he assisted in production of the methamphetamine. Alternatively, the fact that he sold methamphetamine could satisfy the overt act requirement. Given the evidence, the jury could reasonably find that Grobman not only knew about the conspiracy but that he furthered it by assisting in the lab and by selling the finished product. From his actions, the jury could infer intent.
 
 III. Constitutionality of Grobman's Sentence
 
 12
 Grobman claims that his sentence violated due process and the Eighth Amendment. The crux of his due process argument is that the minimum sentencing provision did not leave the judge sufficient discretion to tailor his sentence to his particular culpability. A defendant does not have the right to have the judge consider a sentence less than the minimum. The requirement is simply that "in choosing a sentence within the statutory limits, a trial judge must make an individualized assessment of the defendant's culpability." U.S. v. Kidder, 869 F.2d 1328, 1334-35 (9th Cir.1989).
 
 
 13
 There is no indication that the judge could not or did not take into consideration Grobman's individual situation, including the extent of his participation in the conspiracy relative to other conspirators. Grobman was sentenced to the mandatory minimum. His due process rights have not been violated.
 
 
 14
 Likewise, given the discretion that courts afford legislatures in setting statutory mandatory sentences, Grobman's Eighth Amendment claim also fails. The Supreme Court has said that legislatures possess "broad authority ... in determining the types and limits of punishments for crimes." Solem v. Helm, 463 U.S. 277, 290 (1983).[1] Solem held that only sentences that are "grossly" or "significantly" disproportionate to the crime violate the Eighth Amendment. Id. at 288, 303. See also Harmelin v. Michigan, 111 S.Ct. 2680 (1991) (despite view of two justices that the Eighth Amendment contains no proportionality requirement, the Solem "grossly disproportionate" test seems to have survived). Given the size of the operation, the quantity of methamphetamine being made and the jury's finding that Grobman was guilty of the conspiracy and aiding and abetting the manufacture of methamphetamine, Grobman's mandatory minimum sentence of 10 years is not "grossly" disproportionate to his crimes.
 
 
 15
 IV. Sufficiency of Evidence to Support Trevino's Conviction
 
 
 16
 Trevino's argument that there was not sufficient evidence to support his conviction lacks merit. The evidence establishes that Trevino made several trips to Los Angeles to pick up phenylacetic acid (PAA), a precursor chemical used in manufacturing methamphetamine. Several barrels of PAA seized from the lab on October 3 were identified as having been picked up by Trevino on October 1, 1988 in Los Angeles. It was also established that the barrels of PAA found at the laboratory on October 3 were barrels which had been delivered to Trevino on August 9.
 
 
 17
 Trevino had PAA stored in cardboard barrels and methylamine in five-gallon plastic containers factory marked "Kerosene" in a storage locker. Such chemicals were stored in the same way in the lab seized on October 3.
 
 
 18
 Furthermore, witnesses observed the October 2 transfer of barrels of PAA by Trevino and others to individuals who took them to the home of another indicted conspirator, Fred Montoya, and then to the Hedge Avenue lab site.
 
 
 19
 That his name and phone number were found on index cards in Montoya's home further linked Trevino to the conspiracy. Phone records showed long distance calls between Montoya's and Trevino's numbers and Trevino's number and Jerry Andrews' number between May 4, 1988 and October 15, 1988. Finally, business cards containing slang terms used in the methamphetamine trade were found at Trevino's residence; these cards implicate him in the business of illegal drug production.
 
 
 20
 Given the evidence, the jury could reasonably conclude that Trevino was involved in the conspiracy. The jury could infer from the evidence that Trevino was supplying the lab with precursor chemicals. The evidence was sufficient to show his agreement to assist in the manufacture and distribution of methamphetamine. It is also sufficient evidence of aiding and abetting the manufacture of methamphetamine. The transport and delivery of the precursor chemicals satisfies the overt act requirement, and, intent may be inferred from Trevino's actions.
 
 V. Effective Assistance of Counsel
 
 21
 A defendant claiming ineffective assistance of counsel must demonstrate that counsel's actions were "outside the wide range of professionally competent assistance," and that the defendant was prejudiced by reason of counsel's actions. Strickland v. Washington, 466 U.S. 668, 687-90 (1984). Counsel's conduct must have so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Id.
 
 
 22
 Trevino alleges in his brief that the government established only one delivery of precursor chemicals by Trevino to persons involved in the conspiracy. If counsel would have interviewed alibi witnesses, Trevino alleges, the witnesses had proved Trevino was not involved in that shipment. But even establishment of an alibi would not negate the other evidence against Trevino and cast doubt upon the jury verdict. Other Trevino deliveries were linked to the conspiracy by agents' identification of barrels and cartons found at the lab.
 
 
 23
 The evidence shows that Trevino's trial counsel both investigated and used helpful alibi defense evidence. Counsel excluded evidence which he decided would be harmful or irrelevant. This behavior is entirely consistent with competent representation. Trevino has failed to show either that counsel's representation was outside the "wide range of professionally competent assistance" or that it prejudiced him. Counsel's conduct in no way undermines confidence in the jury's verdict.
 
 
 24
 Affirmed.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Superseded as noted by In Re Petition of Lauer, 788 F.2d 135, 136 n. 2, (8th Cir.1985) by the Comprehensive Crime Control Act of 1984. The deference to legislative determinations, however, appears to remain intact. What changes is that amount of deference to be given to sentencing judges' decisions. Lauer, 788 F.2d at 137