**UNITED STATES of America**

v.

**Thomas E. LONG et al.**

**Crim. No. 80–89.**

United States District Court,
W. D. Pennsylvania.

Jan. 14, 1981.

Robert J. Cindrich, U. S. Atty., Pittsburgh, for plaintiff.

Richard Martin, Gary Zimmerman, Robert Seewald, Joseph Kanfoush, Leonard Sharon, Pittsburgh, Pa., Al Horn, Atlanta, Ga., James O'Malley, Carl Janavitz, Pittsburgh, Pa., Mike Pritzker, Chicago, Ill., Sheldon Wittenberg, Toledo, Ohio, George Mahfood, Robert McClenahan, Pittsburgh, Pa., Irwin Lichter, Miami, Fla., Charles Chassen, Atlantic Beach, N. Y., Bart Beier, Pittsburgh, Pa., for defendants.

MEMORANDUM OPINION DENYING MOTION TO DISMISS INDICTMENT FOR IMPROPER SELECTION OF GRAND JURORS

KNOX, District Judge.

This case already has a lengthy history involving as it does an alleged large con-

65 (7th Cir. 1974); *Sicinski v. Reliance Funding Corp.*, 82 F.R.D. 730, 733–34 (S.D.N.Y.1979); *Greenspan v. Brassler*, 78 F.R.D. 130, 132 (S.D.N.Y.1978).

spiracy to import marijuana out of Colombia and Jamaica into the whole continental United States except Alaska and perhaps, according to the indictment, for further transportation into Canada. The indictment was unsealed on or about July 4, 1980. Since that time, there have been upwards of 130 motions filed all of which have been disposed of by the court at the present time. The case has been assigned for trial February 2, 1981, after having been continued from November 10, 1980, as a result of involvement of two counsel in the trial of another protracted criminal case before another judge of this court.

On December 29, 1980, the defendants presented to the court a motion to dismiss the indictment because of the alleged improper selection of grand jurors who returned the same. The motion made various allegations as to the selection of grand jurors (and presumably petit jurors as well) within the Western District of Pennsylvania and it is charged that it has failed to insure that all citizens have the opportunity to be considered for service on grand juries, that they have the obligations to serve as jurors when summoned for that purpose under 28 U.S.C. § 1861 et seq. The selection of jurors in this case is pursuant to a plan adopted by this court and approved by the Judicial Council of the Circuit but it is claimed that the administration of the plan excludes citizens from service as grand jurors on account of race, color, economic status and occupation and also on account of age. It is also charged that political subdivisions are substantially proportionately (under) represented. It is claimed that voter registration lists which are used as the source of names for the master jury wheel are not adequate as a sole source of names and that disqualifications and excuses have been administered by a clerk rather than a district judge in such a manner that women, white collar workers, persons of high economic status, rural residents and those of low economic status have been disproportionately wrongfully excused from service. The motion contains a request to this member of the court to whom the instant case has been assigned to disqualify himself on the grounds that under 28 U.S.C. § 455(b), he has personal knowledge of the facts concerning this and therefore requests that a judge from out of the district be called to hear this matter. It would appear that if the time were spent in securing the assignment of an out of district judge to hear this case, the matter could not be determined prior to February 2, 1981, the second date fixed for trial.

### (1) Disqualification of This Member of the Court.

It is claimed that all judges of this court have knowledge of the operation of the plan and the handling of excuses thereunder. This may be true to a limited extent but largely the matter of administration of the plan is in the hands of the Chief Judge who supervises the Clerk of Court and passes upon recommendations made by the clerk in accordance with the plan.

■ Even if this member of the court could be held to be a person who "has a personal bias or prejudice concerning a party" which is not alleged or "personal knowledge of disputed evidentiary facts concerning the proceeding" this does not necessarily disqualify him. It has been repeatedly held that Section 455(a) and (b)(1) does not apply to facts learned by a judge in his official judicial capacity which are not to be used to disqualify him or her. *U. S. v. Baker*, 441 F.Supp. 612 (M.D.Tenn.1977); *U. S. v. Patrick*, 542 F.2d 381 (7th Cir. 1976). See observations by the Court of Appeals of this Circuit in *Smith v. Danyo*, 585 F.2d 83 (3d Cir. 1978).

■■ A judge can only be disqualified under these statutes as the court understands it in case he has knowledge from an extra-judicial source with respect to the matter in litigation, as for instance where he is a witness to the transaction or occurrence not in his judicial capacity. We must also remember that the burden is on the defendant to show disqualification of a judge. The request for disqualification will therefore be denied.

(2) Timeliness of the Petition.

█ The court holds that the petition has been untimely filed by the defendants and not within the time limits as allotted by the act (28 U.S.C. § 1867(a), the Rules of Criminal Procedure and the rules of this court and should be dismissed for this reason.

The indictments in this case were returned in May 1980 but were not unsealed until on or about July 4, 1980, when steps were taken to arrest the various defendants named therein who were arraigned at various times during the ensuing months. Because of the varied times of arraignment and varying requests for extension of time to present pretrial motions, the court finally entered a general order allowing the filing of pretrial motions on or before October 1, 1980, when arguments were held with respect to the same. Approximately 125 such motions were filed and later motions have brought the total number of pretrial motions in this case up to approximately 135. The hearing of arguments of such motions and determination thereof has naturally occupied a goodly portion of the court's time.

The motion now before us to dismiss the indictment due to allegedly improper selection of the grand jury was not filed until December 29, 1980. No extension of time had been granted to file such a motion although the court was aware in early October and from time of argument on October 1–2, that investigation was under way as to the facts surrounding the selection of grand jury both in Pittsburgh and in New York where the computer service is located.[1] Nevertheless, no extension was sought. Trial of the case was originally fixed for November 10, 1980, but because of engagement of two of defense counsel in a protracted trial of another case before Judge Diamond of this court, was postponed to February 2, 1980.

The instant motion was filed December 29, 1980.

Turning to the statute 28 U.S.C. § 1867(a), it is provided as follows:

"(a) In criminal cases, before the voir dire examination begins, or within *seven days after the defendant discovered* or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury."

In other words, Congress did foresee that such a motion as this could be used for seeking delay in the trial of the case and therefore limited the time for filing such a motion challenging the jury, either grand or petit, to seven days after the defendant discovered or could have discovered by the exercise of diligence the grounds therefor. It appears that the defendants must have known of the existence of the grounds justifying as they see it the attack upon the jury system in this court by November 20, 1980, when the Friedman affidavit made by the investigator looking into matters concerning the jury system in this district was filed. The latest date for filing under the Act of Congress was therefore November 27, but counsel delayed over a month until December 29, to file this motion. The motion is therefore untimely under the Act of Congress.

Pursuing this matter further it will be noted that the filing of such motions is covered under Rule 12(b) FRCrP which covers the filing of pretrial motions. This merely provides that such motions shall be made before trial. In 12(c) it is provided:

"(c) Motion Date. Unless otherwise provided *by local rule*, the court may, at the time of the arraignment or as soon thereafter as practicable, set a time for the making of pretrial motions or requests and, if required, a later date of hearing."

And in 12(f), it is provided:

"(f) Effect of Failure to Raise Defenses of Objections. Failure by a party to raise

---

1. Among the pretrial motions argued on October 1–2, 1980, was a motion for disclosure of information as to grand jury selection. This was granted by agreement of counsel and order entered October 2, 1980, ordering disclosure of items a, c and d of the motion.

defenses or objections or to make requests which must be made prior to trial, *at the time set by the court* pursuant to subdivision (c), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver."

Thus the rules of criminal procedure clearly provide for the regulation of this matter by local rule.

This court has so provided. In Rule 24(2), it is provided that motions under Rule 12 shall be made at the latest within 10 days after arraignment unless the court extends the time. The court did extend the time until October 1, 1980, but no further extensions were granted except in the case of one defendant who was allowed a little further time because of his late arraignment.

It does appear that the motion in question was untimely filed under both the Act of Congress and the Rules of Criminal Procedure as implemented by the Local Rules of this court.

In view of the fact that this motion was filed December 29, 1980, when the case had been firmly set for trial for February 2, 1981, at a time when the court was already scheduled for three weeks of a trial of a protracted criminal case in Erie, the court can only conclude that one of the purposes of the motion was to force postponement of the trial date, particularly when coupled with the demand that this member of the court disqualify himself and send for a judge from outside the district. This would have consumed so much time that the trial could not possibly have proceeded on February 2.

(3) Merits of the Motion.

Notwithstanding the fact that we have concluded that the motion is untimely filed, nevertheless, in case it should be determined that we are in error in this respect, we have heard arguments on the merits of the motion itself and the government's motion to dismiss the same. It will be noted that under 28 U.S.C. § 1867(a), the motion must be based upon "substantial failure to comply with the provisions of this title in selecting the grand or petit jury".

The procedure for disposition of such motion is contained in local Rule 24 subsection (2)(b) which reads as follows:

"(b) All such motions shall contain or be accompanied by a memorandum or brief presented at the time of filing setting forth the reasons and legal support for granting such motion. All such motions and any supporting briefs shall be served on the United States Attorney who shall file a response to said motion with any supporting memorandum within ten days of service thereof."

It will be noted that the motion must contain facts which would constitute a substantial failure to comply with the provisions of this title. It is only after the motion passes this test that an evidentiary hearing is to be held.

The court has examined with care all the facts and affidavits attached to the motion and has concluded that the facts do not show substantial failure to comply with the provisions of the Act of Congress and that there is nothing to justify dismissing the indictment for such failure.

The jury selection plan of this court as last amended became effective March 13, 1980, having been promulgated by the Board of Judges of this court and the Judicial Council of the Third Circuit including the Chief Judge of this district and the plan provides in detail for the use of the voter registration lists and for the drawing of names by a computer service in New York City. It is provided in Section 3 for the division of this district into two divisions for jury selection purposes the first being the so-called Erie Division consisting of seven counties in the northwestern part of the state and the balance allocated to the Pittsburgh Division containing the remaining eighteen counties constituting this district. It is provided in Section 4 for management and supervision of the plan by the Clerk under supervision and control of the Chief Judge or a judge designated by him and in Section 5 provision is made for the selection of the prospective jurors from the voter

registration lists and placing them in a master wheel. Provision is also made for determining starting numbers and quotients to apply to each county.

With respect to excuses, provision is made in Section 10 for certain persons who are not to be summoned and in Section 11 for excuses on individual requests being cases involving hardship of various kinds. These excuses must be made on individual requests which are first presented to the Clerk and screened by him or the deputy in charge but the excuse can only be granted by order of court. As a matter of practice, the judges of this court take turns after having been designated at random for two-week tours of duty as "miscellaneous judge" who passes upon all such matters during his two-week tour of duty upon receipt of the recommendations of the Clerk all in accordance with the plan itself.

There are provisions also for separate panels in the so-called Erie Division and in the Pittsburgh Division.

The affidavit presented in this case does show variations from exact or perfect standards which might be applied but this does not mean that the jury selection system is at fault or should be discarded and another substituted or used to supplement the same. Such attempt would generally get us back to the much maligned old key-man system which has long been outmoded. It has been held by the court of appeals for this circuit that the jury need not be a perfect mirror of the community or reflect the proportionate strength of every identifiable group. *U. S. v. Zirpoli*, 450 F.2d 424 (3d Cir. 1971).

█ It is true that the defendants are white but nevertheless they have standing to complain that other cognizable groups are excluded. *Peters v. Kiff*, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972).

The final answer to the defendant's arguments is contained in the decision in the Court of Appeals for this circuit in *U. S. v. Lewis*, 472 F.2d 252 (3d Cir. 1973) which answers all of the defendant's objections and clearly holds that reliance on a voter's list is not unconstitutional and is proper unless persons of a certain group have been prevented from registering. The selection will be approved unless it is shown that there has been systematic exclusion of certain cognizable groups. There is here no allegation or any attempt to show a systematic exclusion of certain cognizable groups. Lewis does clearly hold that "use of voter registration lists as the sole source of names for jury duty is constitutionally permissible unless this system results in the systematic exclusion of a cognizable group or class of qualified citizens" and the court went on to hold that a group of persons who choose not to register or vote does not constitute a cognizable group. The affidavit does show certain disparities and does indicate that there is a higher percentage of persons on the voting list in Allegheny County than elsewhere but none of the disparities listed are of such magnitude as to justify an inference of systematic exclusion. See also *Savage v. U. S.*, 547 F.2d 212 (3d Cir. 1978). Our methods of selection have also been upheld in *U. S. v. Torquato*, 308 F.Supp. 288 and *Smith v. U. S.*, 456 F.2d 121 (3d Cir. 1972).

For the above reasons, we determine that on the merits the motion does not set forth a claim justifying relief and the holding of an evidentiary hearing. The motion will therefore be dismissed.