**In re: A.H. ROBINS COMPANY, INC., "Dalkon Shield" IUD Products Liability Litigation.**

**MDL No. 211.**

United States District Court, D. Kansas.

Feb. 1, 1985.

Bradley Post, Post, Syrios & Bradshaw, Wichita, Kan., for plaintiffs.

Alexander H. Slaughter, McGuire, Woods & Battle, Richmond, Va., for defendant Robins.

## OPINION AND ORDER

THEIS, District Judge.

Defendant A.H. Robins Company, Incorporated ("Robins") has filed a motion under 28 U.S.C. § 455(a) seeking the recusal of the presiding judge in this case. This motion is based solely upon this Court's filing of an affidavit before an investigatory panel of the Eighth Circuit Judicial Council concerning Robins' charges of judicial misconduct by the Honorable Miles W. Lord, Chief Judge of the United States District Court for the District of Minnesota.

Since December 10, 1975, this Court has presided over the instant multidistrict litigation ("MDL") proceedings, covering over a thousand federal cases and initially several hundred tagalong state cases involving products liability issues concerning the Dalkon Shield, a birth control device manufactured by Robins. During 1984, Judge Lord made certain remarks to Robins' executives during a settlement conference involving seven Dalkon Shield lawsuits pending before him. As a result of these remarks, Robins filed a misconduct complaint against Judge Lord in the Eighth Circuit. In addition, Robins appealed the district court's actions during the settlement negotiations, which appeal was decided on November 2, 1984, in *Gardiner v. A.H. Robins Co., Inc.*, 747 F.2d 1180 (8th Cir.1984). In the disciplinary proceeding before the Eighth Circuit Judicial Council, this Court filed an affidavit which related the discovery process in the multidistrict Dalkon litigation and which espoused the right of a judge to comment on the proceedings before him. On January 10, 1985, Robins filed the present motion for recusal.

The Court would first disassociate itself from the contention of plaintiffs' counsel that the Robins' disqualification motion is somehow untimely. The Court agrees with Robins that such motion is timely and within the ambit of counsels' duty to use all possible judicial processes to protect their client.

Initially at issue is the applicable legal standard governing the consideration

of the motion for recusal. Under 28 U.S.C. § 455(a), "[a]ny ... judge ... shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The 1974 amendment to section 455 changed the standard for recusal from a subjective one, which left to the judge "in his opinion" the decision whether it would be improper to sit, 28 U.S.C. § 455 (1970), to the present objective standard, which requires disqualification whenever the judge's impartiality "might reasonably be questioned." In its motion for recusal, Robins has placed emphasis on the single term "might." More properly, the inquiry should be whether "there is a reasonable factual basis for doubting the judge's impartiality.... Disqualification for lack of impartiality must have a *reasonable* basis." H.Rep. No. 1453, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 6351, 6355 (emphasis in original). The test is whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge or in the mind of the litigant filing the motion for recusal, but rather in the mind of a reasonable person. *United States v. Cowden,* 545 F.2d 257, 265 (1st Cir.1976), *cert. denied,* 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977).

Prior to the 1974 amendment, the rule was that a judge had a duty to sit on a case if the statutory grounds for his disqualification had not been established. *See United States v. Diorio,* 451 F.2d 21, 24 (2nd Cir.1971), *cert. denied,* 405 U.S. 955, 92 S.Ct. 1173, 31 L.Ed.2d 232 (1972); *United States v. Anderson,* 433 F.2d 856, 860 (8th Cir.1970); *Edwards v. United States,* 334 F.2d 360, 363 (5th Cir.1964). Courts generally agree that the amended version of section 455 was intended to displace the so-called "duty to sit" decisions. *See, e.g., Parrish v. Board of Commissioners of the Alabama State Bar,* 524 F.2d 98, 103 (5th Cir.1975). Recent decisions have noted, however, that a "trial judge has as much obligation not to recuse himself when there is no reason to as he does to recuse himself when the converse is true." *United States*

*v. Bray,* 546 F.2d 851, 857 (10th Cir.1976). *Accord United States v. Baskes,* 687 F.2d 165, 170 (7th Cir.1981).

■ Several additional standards give the Court guidance in its consideration of Robins' motion for recusal, a motion the Court recognizes Robins did not make lightly. Dk. No. 727, p. 2. It is fundamental that the determination of bias, prejudice or lack of impartiality must be made on the basis of conduct which is extrajudicial in nature. *United States v. Grinnell,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966); *United States v. Bray,* 546 F.2d 851, 859 (10th Cir.1976); *United States v. Patrick,* 542 F.2d 381, 390 (7th Cir.1976); *United States v. Cook,* 400 F.2d 877, 879 (4th Cir.1968), *cert. denied,* 393 U.S. 1100, 89 S.Ct. 898, 21 L.Ed.2d 792 (1969).

■ Plaintiffs allude to ulterior motives behind the present motion, such as forum-shopping. To evidence this contention, plaintiffs suggest that Robins' motion for class action certification, filed in *In Re: Dalkon Shield Punitive Damages Litigation,* No. 84–0884–R (E.D.Va., filed October 22, 1984), and Robins' motion for transfer of MDL 211 to the Eastern District of Virginia, filed with the Judicial Panel on Multidistrict Litigation, indicate an intent to shift the focus of the Dalkon Shield litigation to Robins' home district of Virginia. The Court believes that forum-shopping is not an appropriate subject of inquiry for the purposes of the present motion. A single matter is properly before the Court at this time: whether this Court should recuse under section 455.

The Court is mindful of the proposition that "disqualification is not favored where ... a single judge has acquired by experience familiarity with a protracted, involved case which could not easily be passed on to a second judge." *City of Cleveland v. Cleveland Electric Illuminating Co.,* 503 F.Supp. 368, 370 (N.D.Ohio), *mandamus denied sub. nom City of Cleveland v. Krupansky,* 619 F.2d 576 (6th Cir.1980). *See also National Auto Brokers Corp. v.*

*General Motors Corp.*, 572 F.2d 953 (2nd Cir.1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979). With the above standards in mind, the Court shall proceed to analyze the substance of the parties' arguments.

The precise issue at hand is somewhat difficult to capsulize. Robins has framed the issue by employing a number of terms, such as *"ex parte* communication," "witness in a proceeding," and "personal opinion." These characterizations miss the mark. The issue concerns whether this Court's remarks took place in an extrajudicial context or whether they constituted appropriate judicial action. More particularly, may a judge come to the assistance of a fellow judge in a disciplinary proceeding without risking disqualification himself?

To be disqualifying, the alleged bias or prejudice must arise from an extrajudicial source and must result in an opinion "on some basis other than what the judge learned from his participation in the case." *Davis v. Cities Service Oil Co.*, 420 F.2d 1278, 1282 (10th Cir.1970) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). *See also Smith v. Halford*, 570 F.Supp. 1187, 1189 (D.Kan.1983)). The Fifth Circuit has held that although a judge's remarks or behavior occur in a judicial context, this does not exclude them from scrutiny if they reflect "such pervasive bias and prejudice as would constitute bias against a party." *Phillips v. Joint Legislative Committee on Performance and Expenditure Review*, 637 F.2d 1014, 1020 n. 7 (5th Cir.1981), *cert. denied sub. nom Mississippi v. Phillips*, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1982). Counsel for Robins, however, carefully noted at oral argument on the recusal motion that he advanced no allegations of actual bias or prejudice, but that he was concerned only about the appearance of partiality.

The Court believes that the appearance of impartiality is as important as the fact of it, but finds that the question of impar-

tiality cannot be analyzed *ex nihilo*. Thus, the inquiry must be targeted toward whether the Court's action in filing an affidavit in Judge Lord's chastisement proceeding occurred in a judicial or extrajudicial context.

Numerous courts have drawn the distinction between bias that is personal in nature and bias that is judicial, *see, e.g., United States v. Carmichael*, 726 F.2d 158, 160 (4th Cir.1984), but few have delineated the contrast between judicial and extra-judicial activities. It is clear that a motion for disqualification may not be predicated on a judge's rulings "in the instant case or in related cases, nor on a demonstrated tendency to rule any particular way, nor on a particular judicial leaning or attitude derived from his experience on the bench." *Phillips*, 637 F.2d at 1020. *See also Shaw v. Martin*, 733 F.2d 304, 308 (4th Cir.1984). Beyond that, the ambit of the judicial context is somewhat murky.

To ascertain the nature of this Court's action in filing an affidavit in a fellow judge's disciplinary proceeding, a fairly unique set of circumstances unaddressed directly by the reported cases, the Court looks to cases focusing upon whether a judge's conduct occurred in a judicial or extrajudicial capacity. During the Watergate prosecutions, the intrepid probing of Judge John Sirica led to the revelations of corruption at the highest levels of government. Judge Sirica presented the testimony of a witness which neither party had called, an action approved in *United States v. Liddy*, 509 F.2d 428, 438–42 (D.C.Cir. 1974). He ordered the production of presidential tape recordings, an order upheld in *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). During sentencing, Judge Sirica indicated that cooperation with the prosecution might result in lighter sentences. *United States v. McCord*, 509 F.2d 334, 347 (D.C.Cir.1974). Judge Sirica commented to the media that the Watergate defendants could receive as fair a trial in the District of Columbia as in any other federal court in the United States. *United States v. Haldeman*, 559

F.2d 31, 136 (D.C.Cir.1976), *cert. denied sub. nom Ehrlichman v. United States,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). In the conspiracy trial of John Mitchell, John Ehrlichman and others, several defendants moved for the recusal of Judge Sirica because of his involvement in so many aspects of the Watergate indictments and prosecutions. Judge Sirica denied recusal on the ground that the allegations showed only prior judicial actions and that no "personal" bias, only "judicial" bias, had been claimed. *United States v. Mitchell,* 377 F.Supp. 1312, 1320 (D.D.C. 1974). The judge's use of his knowledge derived from judicial proceedings in the administration of other such proceedings withstood repeated attacks. Judge Sirica's judicial activism was commended in *McCord,* 509 F.2d at 347:

> "A superficial review of these events might support the inference that at least Judge Sirica communicated an appearance of inquisitional attitude inconsistent with notions of a fair trial. However, such a view assumes an exceedingly narrow interpretation of the responsibilities of a trial judge.... The judge, like the prosecutor in this respect, is not a passive bystander in the arena of justice, a spectator at a 'sporting event'; rather, he or she has the most pressing affirmative responsibility to see that justice is done in every case."

In *United States v. Serrano,* 607 F.2d 1145, 1150 (5th Cir.1979), *cert. denied,* 445 U.S. 965, 100 S.Ct. 1655, 64 L.Ed.2d 241 (1980), the Fifth Circuit upheld Judge Terrell Hodges' denial of a motion to disqualify premised upon his remarks which indicated an intention to impose stiff penalties to curb large scale drug importation: "Reading Judge Hodges' remarks in context clearly demonstrates that any predisposition to sentence volume drug offenders severely stemmed from his observations in a strictly judicial capacity as to the volume of such cases in the courts and the lack of deterrent effect of light sentences for such offenders." The Court acknowledged that acquisition of information in one case could be employed to fashion an opinion in other related cases and held that any impressions formed and acted upon were "judicial rather than personal." *Id.*

Finally, in *Bradley v. Milliken,* 620 F.2d 1143 (6th Cir.1980), *cert. denied,* 449 U.S. 870, 101 S.Ct. 207, 66 L.Ed.2d 89 (1981), the Sixth Circuit refused to disqualify Judge Robert DeMascio, of the United States District Court for the Eastern District of Michigan, under section 455(a) on the ground that he met *ex parte* with representatives of a school board in a school desegregation case. The Court held that although Judge DeMascio's actions were "perhaps a bit unorthodox," they constituted "judicial activities designed to ensure a community climate receptive to [the] court's orders." *Id.* at 1157.

In sum, the above cases indicate a tendency on the part of courts to define the ambit of "judicial" activity quite broadly. Actions taken by a court in one case which draw upon the court's experience in prior cases have been held to constitute judicial actions. Furthermore, activities of judges in meeting with the press and with litigants were sanctioned as actions which insured the effective and efficient administration of the courts.

Applying the above precepts, the Court determines that its filing of an affidavit was an action performed in the Court's judicial capacity, rather than an extrajudicial activity. The Court's thoughts were voiced in a judicial setting—before the investigatory panel of the Eighth Circuit Judicial Council—and the informational source upon which they drew—the Court's eight and one-half years of experience in the multidistrict Dalkon litigation—was distinctly judicial.

Furthermore, in a broader sense, the Court's actions went to the heart of the judicial process. The substance of the Court's affidavit in part concerned possible discovery abuses potentially practiced both in the Dalkon cases before Judge Lord and in the instant cases. It is the duty of a trial judge to supervise, manage and control pretrial discovery, "for he is the single

individual who, in the exercise of this purely judicial discipline, can do so effectively." *City of Cleveland,* 503 F.Supp. at 375 n. 4. In the present matter, it was particularly the province of this Court, in control of over one thousand cases consolidated into multidistrict litigation, to affirmatively exercise this duty and to inquire into and attempt to thwart any perceived abuses of the discovery process.

This Court is charged by Canon 1 of the Code of Judicial Conduct for United States Judges with the obligation to uphold the integrity of the judiciary. It was precisely this critical function that the Court attempted to perform by filing the affidavit: the prevention of any possible fraud from being perpetrated upon the courts. As the United States Supreme Court stated in *Wood v. Georgia,* 370 U.S. 375, 383, 82 S.Ct. 1364, 1369, 8 L.Ed.2d 569 (1962), "[T]he right of courts to conduct their business in an untrammeled way lies at the foundation of our system of government...." The Court finds completely unpersuasive the intimation that it is a demonstration of bias for a judge who has been working on discovery for over eight years to comment on and uncover possible abuses in the proceedings before him. Surely section 455(a) never contemplated crippling the courts.

Regarding Robins' specific concerns, Robins first contends that the appearance of impartiality is threatened by this Court's having stated in the affidavit a "personal opinion" that Robins might be guilty of discovery misconduct and now being called upon to make just such a determination in the current litigation. As explained above, the opinion expressed in the affidavit was particularly judicial. Furthermore, mere prior involvement with an issue cannot disqualify a judge; "otherwise, a judge could never reach the end of a case without being disqualified through exposure to it in earlier stages." *United States v. Wayne County Department of Health-Air Pollution Control Division,* 571 F.Supp. 90, 93 (E.D.Mich.1983).

In addition, whatever partiality is alleged is simply not the type of partiality prohibited by section 455:

"While bias or prejudice may spring from many sources, often extrajudicial in their origin, the negative bias or prejudice of the kind alleged here will disqualify only if it is an attitude or state of mind that belies an aversion or hostility of a kind or degree that a fair-minded person could not entirely set aside when judging certain persons or causes. It is an animus more active and deep-rooted than an attitude of disapproval toward certain persons because of their known conduct, unless the attitude is somehow related also to a suspect or invidious motive such as racial bias or a dangerous link such as financial interest, and only the slightest indication of the appearance or fact or bias or prejudice from these sources would be sufficient to disqualify."

*United States v. Conforte,* 624 F.2d 869, 881 (9th Cir.1980). The affidavit does not address the merits of the present litigation nor does it exhibit any predisposition for or against any party or counsel. In fact, the affidavit specifically stated: "I have always had courteous treatment and high regard for the gentlemanly conduct and representations of Alex Slaughter, lead counsel for Robins, and local counsel, Ron Heck." Affidavit of Frank G. Theis, *In Re Complaint of A.H. Robins Co., Inc.,* JCP 84–001, p. 4 (8th Cir.1984). There is a salient difference between a judge making observations about proceedings and being prejudiced regarding parties or issues in proceedings. The affidavit exhibits experience; that is not tantamount to partiality.

Finally, of primary importance, a judge's comment is disqualifying "only if it connotes a fixed opinion." *Haldeman,* 559 F.2d at 136. Even the most unfavorable reading of the substance of the affidavit cannot lend any support to the charge of a fixed opinion on the issue of potential discovery abuses. The affidavit spoke only in terms of appearances:

"The reports ... *would seem to indicate* that my understanding of the status of document production at the close of the

second MDL hearing was inconsistent with the facts as they then existed.... *[I]t would appear* to me that a great volume of material was numbered for production but not produced.... *It would appear to me* that representations made to me concerning the completeness of discovery during the MDL proceedings are open to serious question."

Affidavit, pp. 1–2 (emphasis added).

In the affidavit the Court spoke in hedging terms for a specific reason. The Court had not then and has not yet made up its mind regarding potential discovery abuses. Proceedings have been started before this Court to determine whether there exists any semblance of validity to the discovery abuses claimed by plaintiffs. A number of motions are presently on file before this Court concerning allegations of misconduct, such as harboring and the destruction of evidence. The Court has received briefs on these matters and will conduct hearings concerning them: both Robins and plaintiffs will be afforded every opportunity to be heard on these issues. The commands of due process will be fully satisfied before this Court examines the issues and renders a decision on the merits. In litigation of this size, the Court recognizes that a voluminous amount of records are in the fray and that any failure to produce documents may easily be the result of inadvertence. The Court's conduct during the course of these proceedings indicates an abundance of caution in making decisions. The Court *sua sponte* held in abeyance any receipt of evidence on the current discovery motions in MDL 211 pending oral argument, receipt of briefs and resolution of the present recusal motion. Far from indicating an appearance of partiality, the Court's actions exhibit a careful and fair-minded attitude. The affidavit itself suggests the Court's flexibility regarding the satisfaction of discovery orders:

"Since commencing these proceedings, they have consumed unnumbered days of court time, have lasted over a period of eight and one-half years, and are still ongoing. During this time, thousands of documents had been produced and *I was satisfied that appropriate discovery had been made, that only privileged documents had been withheld, and that all available relevant evidence in the possession of A.H. Robins and its attorneys had been made available to the plaintiffs....*

In August of 1981, and again in September, 1982, counsel for plaintiffs requested that I reopen these proceedings and represented to me as a reason therefor that certain documentation existed which had not been produced pursuant to my previous discovery orders, and to make video depositions of key Robins officials. *After an evidentiary hearing, I reopened discovery proceedings.* In the course of these proceedings, many additional documents were produced. *At the conclusion of these proceedings, I was again satisfied that all relevant and nonprivileged materials had been produced."*

Affidavit, pp. 1–2 (emphasis added). Any tendency to attribute bias to the language contained in the Court's affidavit is fairly dispelled when the affidavit is read in its entirety and in context.

Next, Robins claims that this Court had *ex parte* communications with Judge Lord and his counsel. Robins' reliance on the notion of *ex parte* communications is misplaced. Communication between two federal judges or between a judge and another judge's counsel is not *ex parte* communication. This Court did receive the reports of the Special Masters, officers of the federal court in Minnesota, copies of which reports were provided to both parties. The Court did not conduct any extrajudicial investigation of the facts surrounding the complaint against Judge Lord.

Regarding the timing of this Court's review of the Special Masters' reports, plaintiffs contend that since they requested this Court to examine the reports of the Special Masters, which reports plaintiffs submitted to the Court on December 11, 1984, before defendant filed the recusal motion on Janu-

ary 10, 1985, that the allegation of *ex parte* conduct is moot. The Court agrees with Robins that the Court must focus its attention on its actions at the time they were undertaken.

Numerous cases have allowed *ex parte* communications and receipt of information to protect the integrity of the judicial process. In *United States v. Phillips*, 664 F.2d 971 at 1003 (5 Cir.1981), the Fifth Circuit Court of Appeals held that the trial court was not improperly involved in collateral investigation of alleged plans to disrupt the trial when strike force attorneys contacted the presiding judge and informed him of the plans of certain defendants to flee from the country if bond was not revoked. The Court held that the communications did not require recusal of the judge and noted that any *ex parte* revelations were made to enable the judge to perform his duty to conduct an orderly trial.

Similarly, in *United States v. Jackson*, 430 F.2d 1113 (9th Cir.1970), the Court held that *ex parte* communication of threats to witnesses was not a basis for disqualification. In *Bradley v. Milliken*, 620 F.2d at 1157, the Sixth Circuit held that a judge's *ex parte* meetings with a school board in developing a desegregation plan did not create an appearance of partiality because the meetings were a judicial activity intended to insure a community climate receptive to the court's orders.

Finally, in *United States v. Mitchell*, 377 F.Supp. at 1322, the Court noted that "[j]udges routinely preview evidence or information bearing on a case in other settings, with no thoughts of disqualification arising as a result." In short, " '[k]nowledge acquired by a judge while he performs judicial duties does not constitute grounds for disqualification.' " *Katsaros v. Cody*, 744 F.2d 270, 283 (2nd Cir.1984) (quoting *United States v. Coven*, 662 F.2d 162, 168 (2nd Cir.1981), *cert. denied*, 456 U.S. 916, 102 S.Ct. 1771, 72 L.Ed.2d 176 (1982)).

As discussed above, the Court's actions in the instant case involved the performance of judicial duties. The reports of the Special Masters concerned specifically the same area of discovery which this Court has been shepherding for many years. *If* the claims of Judge Lord and his experienced Masters were true, in whole or in part, then the basis of his comments, if not his precise choice of procedure and words, had important ramifications in similar litigation pending in federal courts throughout the United States and certainly in this court. The Court's acquaintance with information pertinent to this case has in every instance flowed from judicial sources. To the extent that the receipt of any information could be characterized as *ex parte*, it takes on no pernicious connotation. The information was brought to this judge's attention during the performance of his judicial duties.

Robins characterizes the affidavit as conflicting with the principles underlying 28 U.S.C. § 455(b)(5)(iv), which requires disqualification if a judge is "likely to be a material witness in the proceeding." This judge is unlikely to be called as a witness in the current multidistrict Dalkon litigation. Furthermore, the concerns underpinning this provision are inapposite to the present case. As the case cited in part by Robins, *In Re Continental Vending Machine Corp.*, 543 F.2d 986, 995 (2nd Cir. 1976), goes on to state:

"The purpose of this provision is to prevent a judge from having to pass on the competence and veracity of his own testimony given with respect to a matter presently in controversy before him. The mere fact that he may have testified with respect to some wholly unrelated matter should not disqualify him (citations omitted), since it does not require him to pass upon the credibility of his own testimony and there is no reason to suppose that his decision might be affected by his unrelated testimony. Were the rule otherwise, a judge in an extended and multisegmented ... case ... who has patiently sat on the case for many years, would be forced, for no sound reason, to disqualify himself as to the

entire case, leading to wasteful duplication, delay and expense."

The only matter to which the Court affirmatively "testified" was the right of a trial judge to comment on the proceedings before him. Affidavit, p. 5. Furthermore, this Court was a "witness" only in his judicial capacity. *See United States v. Long,* 88 F.R.D. 701, 702 (W.D.Pa.1981). Finally, the Court will not be required to pass upon the credibility or veracity of its own "testimony" in the instant MDL proceedings, since the affidavit merely said that serious questions concerning discovery abuses were raised in the Dalkon litigation. Long prior to the affidavit submitted by the Court in Judge Lord's disciplinary proceedings, serious questions were raised by plaintiffs in the present litigation regarding possible discovery abuses. Dk. No. 643. The allegation that this Court is "likely to be a witness" in the instant proceedings is without merit.

Robins' final concern is the effect of the affidavit. Robins notes that plaintiffs in other Dalkon cases have cited the affidavit in support of arguments that Robins is guilty of discovery abuses and that the affidavit has been the subject of widespread media publicity. The affidavit should not have been made a matter of public record. Disciplinary proceedings are supposed to be confidential and only at Judge Lord's request did the matter become public.

■ Robins intimates that because the affidavit became a matter of public record, it is public comment about a pending proceeding, in violation of Canon 3(A)(6) of the Code of Judicial Conduct for United States Judges. Public records are not equivalent to public comment. Otherwise, all opinions would be construed as public comment. Finally, the Court cannot control the use of his affidavit by partisan plaintiffs, nor can the Court muzzle the media. A judge considering whether to disqualify himself must ignore rumors, innuendos and erroneous information published as fact in the newspapers. *In re United States,* 666 F.2d 690, 695 (1st Cir.1981). Judicial inde-

pendence cannot be subservient to public opinion.

Robins' motion for recusal wholly ignores the primary purpose of the Court's affidavit. The affidavit states:

"I do not believe a judge should be hobbled or censored for good faith remarks he makes with full knowledge of facts and circumstances which appear to him to inhibit the processes of justice and the inherent right of free speech of a judge to prevent possible fraud upon the court."

Affidavit, p. 5.

Many decisions have recognized the power of judges to comment on the evidence in a case and to express opinions. *See, e.g., United States v. Bray,* 546 F.2d at 858; *United States v. Womack,* 454 F.2d 1337, 1342 (5th Cir.1972), *cert. denied,* 414 U.S. 1025, 94 S.Ct. 450, 38 L.Ed.2d 316 (1973). A long line of Tenth Circuit cases have upheld even remarks presented in strident terms. *United States v. McKay,* 491 F.2d 616 (10th Cir.1973), *cert. denied,* 419 U.S. 1047, 95 S.Ct. 619, 42 L.Ed.2d 640 (1974); *Whitlock v. United States,* 429 F.2d 942 (10th Cir.1970); *Cooper v. United States,* 403 F.2d 71 (10th Cir.1968). Judge Lord expressed his views on a particular case; this Court commented on Judge Lord's expression of views.

In addition, this Court was appalled at the procedural treatment of Judge Lord in the filing of a disciplinary proceeding, particularly when the avenue of appeal not only remained open to but was utilized by Robins. Use of such indirect avenues of reproach is antithetical to the proper functioning of the judicial system; its use has a chilling effect on the independence of a federal judge. In *Gardiner v. A.H. Robins,* 747 F.2d 1180, 1190 (8th Cir.1984), the Eighth Circuit agreed:

"[T]he propriety of the court's comments is at the heart of a disciplinary proceeding commenced by Robins and its officers against Judge Lord under the Judicial Conduct and Disability Act of 1980, 28 U.S.C. § 372 (1982), now pending before the Judicial Council of this circuit.

It is far more desirable for this issue to be addressed in the normal appellate process than in the extraordinary context of a disciplinary proceeding."

Ultimately, the Eighth Circuit Judicial Council recognized that Robins' action in filing a disciplinary charge was duplicative of the action taken by appeal. In *In Re Complaint of A.H. Robins*, JCP 84–001 (8th Cir. December 5, 1984), the Judicial Council dismissed the disciplinary complaint as moot because of the action taken by the Eighth Circuit on appeal.

In *Gardiner*, the Eighth Circuit commented upon the proper role of a judge in the administration of justice:

"The judicial branch of the government is not and should not become an advocate for private causes. A federal district judge holds one of the most powerful and respected offices in this country. The judge exercises a power over a person's life, liberty, and property, legally restrained only by the review processes of a court of appeals and the Supreme Court of the United States."

*Gardiner v. A.H. Robins*, 747 F.2d at 1194.

This Court fully agrees with the Eighth Circuit's pronouncements regarding the power and the duties of a federal judge and the obligation incumbent upon all federal judges to maintain impartiality. To the extent that Judge Lord overstepped the bounds of propriety and personally assailed Robins' officers, this Court respectfully disagrees with his reprimand. This Court, however, continues to espouse the right of a federal judge to comment on matters before him. The day that a judge cannot comment on the evidence in a case before him, or the applicability of precedential law to the case, will be the day that a free and independent judiciary is dead.

In the instant motion for recusal, Robins attempts to use the result of the *Gardiner* decision to argue that this Court should not have filed an affidavit in support of Judge Lord's practices. Robins appears to be constructing an oblique argument of guilt by association. Merely because the Eighth Circuit ruled adversely to Judge Lord on

appeal in no way compels the conclusion that this judge, in a separate chastisement proceeding, should not have supported a fellow judge's right to speak freely. A judge should not be disqualified merely because he believes his brethren have rights under the First Amendment within the confines of the canons of judicial ethics.

In sum, the test for recusal is whether "a reasonable [person] ... under all the circumstances" would question the judge's impartiality. *United States v. Gigax*, 605 F.2d 507, 511 (10th Cir.1979). Robins has focused on particular circumstances and has viewed them with a partisan eye. Although the facts surrounding the complaint against Judge Lord and this Court's filing an affidavait in a chastisement proceeding are somewhat unusual, they do not, when examined in their entirety, compel this Court's recusal in the instant case. If this Court were to disqualify in the present case, the precedent set would place the judiciary between Scylla and Charybdis; a judge would be required to choose between protecting the integrity of the judicial process and risking disqualification himself.

IT IS THEREFORE ORDERED that Robins' motion for recusal is hereby denied.