**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-1706**

JOSH MALONE,

Plaintiff - Appellant,

v.

UNITED STATES PATENT AND TRADEMARK OFFICE,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.  (1:23-cv-01050-CMH-IDD)

Argued:  March 18, 2026                                    Decided:  May 5, 2026

Before WILKINSON, NIEMEYER, and KING, Circuit Judges.

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Wilkinson and Judge King joined.

**ARGUED:**  Brett Aaron Mangrum, CHERRY JOHNSON SIEGMUND JAMES, PLLC, Dallas, Texas, for Appellant.  Matthew James Mezger, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:** Travis L. Richins, CHERRY JOHNSON SIEGMUND JAMES, PLLC, Waco, Texas, for Appellant.  Jessica D. Aber, United States Attorney, Carolyn M. Wesnousky, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

NIEMEYER, Circuit Judge:

Josh Malone, a volunteer with US Inventor, a nonprofit organization dedicated to promoting innovation in the United States, filed a Freedom of Information Act (FOIA) request with the Patent and Trademark Office (PTO) seeking documents relating to a particular adversary proceeding before a three-judge panel of the Patent Trial and Appeal Board (PTAB or "Board"). Malone requested documents relating to the panel of administrative patent judges assigned to hear the matter, the changes to the makeup of the panel during the course of the proceeding, and the drafts of the written decision that the panel ultimately issued.

After Malone commenced this action under FOIA, the PTO provided roughly 1,500 pages of documents in response to Malone's request. But it did not provide the drafts of the panel's decision, which had been circulated to nonpanel judges, nor did it provide communications relating to the circulation of those drafts to nonpanel judges, relying on Exemption 5 in FOIA. Exemption 5 authorizes the PTO to withhold from disclosure documents that are both predecisional and deliberative. *See* 5 U.S.C. § 552(b)(5); *Solers v. IRS*, 827 F.3d 323, 328–29 (4th Cir. 2016).

Malone contended that Exemption 5 did not support withholding the undisclosed documents. He argued that the documents were not deliberative because, having been shared with nonpanel members before the panel issued its final decision, they were *ex parte*. He claimed that such *ex parte* circulation violated "the [Administrative Procedure Act], due process, and the USPTO's regulations against *ex parte* communications,"

2

amounting to "government misconduct," and therefore the documents were not protected by Exemption 5.

On cross-motions for summary judgment, the district court concluded that the documents were properly withheld under Exemption 5 and were not *ex parte* communications and that there was no "government misconduct defense" under Exemption 5 that would require their disclosure. Accordingly, it granted summary judgment to the PTO. For the reasons that follow, we affirm.

I

Acting under FOIA, Malone requested a range of documents from the PTO relating to an "inter partes review" proceeding that Palo Alto Networks, Inc. had initiated with respect to a cybersecurity-related patent owned by Centripetal Networks, Inc. During the course of the proceeding, Centripetal Networks filed a motion seeking the recusal of a patent judge on the designated three-judge panel because the judge owned stock in a company allegedly affected by the proceeding. That patent judge, as well as another on the panel, thereafter withdrew from the case, and two new patent judges were assigned to the panel. That reconstituted panel then issued a decision denying Centripetal Networks' recusal motion.

Malone's FOIA request appears to have focused on the particular patent judges originally assigned to the panel, the reconstitution of the panel during the inter partes review, and the decision that the reconstituted three-judge panel made to deny the recusal motion. His FOIA request to the PTO identified the following documents for production:

3

1. Information showing the identity of each of the individuals who participated in the Decision Denying Patent Owner's Motion for Recusal and Vacatur and Denying, in Part, Patent Owner's Motions for Rehearing (Paper 55).

2. Information showing the opinions of each of the individuals who participated in the Decision Denying Patent Owner's Motion for Recusal and Vacatur and Denying, in Part, Patent Owner's Motions for Rehearing (Paper 55).

3. Information showing the opinion(s) of APJ Brian McNamara with respect to the Decision Denying Patent Owner's Motion for Recusal and Vacatur and Denying, in Part, Patent Owner's Motions for Rehearing (Paper 55).

3. [sic] Information showing the views of Kathi Vidal with respect to the Decision Denying Patent Owner's Motion for Recusal and Vacatur and Denying, in Part, Patent Owner's Motions for Rehearing (Paper 55).

4. Information showing the members of the Circulation Judge Pool who participated in reviewing the Decision Denying Patent Owner's Motion for Recusal and Vacatur and Denying, in Part, Patent Owner's Motions for Rehearing (Paper 55).

5. Information identifying the members of the Circulation Judge Pool for 2022 and 2023.

6. Information showing the legal basis for having more than 3 judges participate in an Inter Partes Review via the Circulation Judge Pool without assigning them to a panel under 35 U.S.C. §6(c).

7. The amount of Cisco stock held by APJ Brian McNamara in 2022 and 2023.

8. The amount of Cisco stock held by each member of the Circulation Judge Pool in 2022 and 2023.

9. Information showing the identity of each of the individuals who participated in the Decision Granting Motion for Joinder (Paper 39).

10. Information showing the opinions of each of the individuals who participated in the Decision Granting Motion for Joinder (Paper 39).

Because the PTO failed to respond to the request in a timely manner, Malone commenced this action, requesting an order that the PTO respond to his FOIA request.

4

Pursuant to production schedules established by the district court, the PTO produced roughly 1,500 pages of documents. But it withheld other documents, relying on Exemption 5 of the Act. *See* 5 U.S.C. § 552(b)(5). The PTO characterized the withheld documents as (1) "draft versions of three different Patent Trial and Appeal Board decisions at various stages of the editing and review process, with redlining and/or comments," and (2) "emails between Patent Trial and Appeal Board employees discussing these drafts and exchanging their opinions and analysis of the issues presented." The PTO asserted that these documents were "predecisional because [they] consist[ed] of draft orders and emails, which express[ed] opinions and recommendations regarding proposed agency actions antecedent to the adoption of a position" and "deliberative because [they] consist[ed] of employees' recommendations and opinions on legal policy matters." Thus, it claimed, they fairly fell within Exemption 5. *See City of Virginia Beach v. U.S. Dep't of Com.*, 995 F.2d 1247, 1251 (4th Cir. 1993).

Malone disagreed with the PTO's position, arguing that communications between the patent judges on the panel and nonpanel patent judges were *ex parte* communications, and because *ex parte* communications are not lawful deliberations, they were not shielded by Exemption 5. He argued that the *ex parte* communications violated the Administrative Procedure Act (APA), the Fifth Amendment's Due Process Clause, and the PTO's regulation against *ex parte* communications, 37 C.F.R. § 42.5(d).

On cross-motions for summary judgment, the district court granted judgment to the PTO, concluding that the PTO had readily met its burden to show that the withheld documents were "predecisional and deliberative." The court explained that the documents

5

requested "relate[d] to draft decisions that ha[d] not yet been published by the PTAB panel," and, as drafts of an adjudicatory opinion with intra-agency comments, they were "precisely the type of documents that are considered deliberative, as they constitute[d] initial drafts of decisions and feedback from other PTAB employees about the decisions." The court declined to address Malone's APA and due process claims, admonishing that his complaint "attempt[ed] to shoehorn an argument that intra-agency communications between panel [patent judges] and other non-panel USPTO employees [were] unconstitutional and in violation of the APA into a FOIA case" without providing the court with an explanation of its legal authority to "reach such a broad conclusion on the legality and constitutionality of these communications" in the context of FOIA. The court further concluded that Malone likely lacked standing to bring such claims directly.

From the district court's judgment dated June 17, 2024, Malone filed this appeal.

II

Apparently concerned about the PTO's practices of assigning patent judges to a particular proceeding and in circulating draft opinions among judges, Malone contends that this appeal "centers on the principle that government officials cannot secretly interfere in adjudications to which they are not lawfully assigned, nor can they hide such interference under the guise of the 'deliberative process' privilege." Thus, he argues that the documents he is requesting are not "deliberative" because the circulation of draft opinions to nonpanel judges violated

> the due process rights of the parties involved, contravene[d] the APA's requirements for impartial adjudication, and breach[ed] the statutory

6

mandate that only assigned [administrative patent judges] can deliberate on [inter partes reviews]. Such communications [were] not "deliberative" in any lawful sense because they involve[d] individuals who have no authority to exert secretive influence in the decision-making process.

Accordingly, he concludes that the documents were not lawfully exempt from disclosure under Exemption 5.

We are thus presented with three issues. First, we must decide whether the withheld documents were categorically predecisional and deliberative, so as to fall within Exemption 5. Second, we must decide whether the circulation of draft opinions to nonpanel patent judges was *ex parte*, thus rendering the communications non-deliberative and subject to disclosure. And third, we address Malone's claim of government misconduct. We take these in order.

A

We have little difficulty in concluding that the documents withheld by the PTO were categorically both predecisional and deliberative. The documents in question were, as described by the PTO, (1) "draft versions of three different PTAB decisions at various stages of the editing and review process, with redlining and/or comments," and (2) "emails between PTAB employees discussing these drafts and exchanging their opinions and analysis of the issues presented."

Exemption 5 shields from a FOIA production "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Thus, documents that would be protected from civil discovery by the deliberative-process privilege, attorney-client

7

privilege, or work-product privilege are shielded from FOIA. *See U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021); *Solers*, 827 F.3d at 328–29. The deliberative-process privilege in particular, which is at issue here, serves the important and beneficial purpose of ensuring that "debate and candid consideration of alternatives within an agency are not subject to public inspection." *Rudometkin v. United States*, 140 F.4th 480, 487 (D.C. Cir. 2025) (cleaned up). When relying on the deliberative-process privilege, the government must show that, "in the context in which the materials were used, the documents were both *predecisional* and *deliberative.*" *Solers*, 827 F.3d at 329 (emphasis added) (quoting *City of Virginia Beach*, 995 F.2d at 1253).

"Predecisional documents are those prepared in order to assist an agency decisionmaker in arriving at his decision." *Solers*, 827 F.3d at 329 (cleaned up). Thus, a PTAB panel's draft opinions that are proposed to resolve some or all claims in an inter partes review, as well as the comments and proposed edits of various nonpanel judges on and about those drafts, are plainly predecisional. They are prepared to assist the panel *in advance* of arriving at its final decision and issuing its written opinion. Indeed, Malone's characterization of the documents as "*recommendations* for changes to *draft* opinions" focuses on their predecisional nature. (Emphasis added). *See Empower Oversight Whistleblowers & Rsch. v. Nat'l Insts. of Health*, 122 F.4th 92, 105 (4th Cir. 2024) ("A document is pre-decisional if it was generated prior to the agency's final decision on the matter").

Also, documents are "deliberative" in the context of the deliberative-process privilege when they "reflect the give-and-take of the consultative process by revealing the

manner in which the agency evaluates possible alternative policies or outcomes." *Solers*, 827 F.3d at 329 (cleaned up). Thus, the "fact that the documents in question were *drafts* . . . indicates that the documents were . . . deliberative." *Empower Oversight*, 122 F.4th at 106. Moreover, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" are quintessential examples of that which the deliberative-process privilege covers. *Solers*, 827 F.3d at 329 (cleaned up); *see also Empower Oversight*, 122 F.4th at 106. As a consequence, when Malone sought documents showing the opinions of patent judges on draft decisions, he was seeking deliberative documents. *See Rein v. U.S. Pat. & Trademark Off.*, 553 F.3d 353, 373 (4th Cir. 2009).

We conclude, therefore, that the PTO readily satisfied its burden of demonstrating that the documents that Malone requested and that it withheld were indeed categorically both predecisional and deliberative and therefore fell within Exemption 5. *See Hanson v. U.S. Agency for Int'l Dev.,* 372 F.3d 286, 290 (4th Cir. 2004) (holding that the PTO has the burden of establishing that documents fall within an FOIA exemption).

B

Malone does not meaningfully dispute these conclusions. Rather, he argues that the requirement that a document be "deliberative" can only be satisfied by documents of and among the patent judges *assigned to the proceeding*, as only those panel members were authorized to issue the written decision. As he articulates his point:

> The USPTO has withheld communications between assigned APJ panels and non-panel APJs—Extra-Panel Review Members—who were not designated

9

by the Director for these specific proceedings. These undisclosed communications violate the due process rights of the parties involved, contravene the APA's requirements for impartial adjudication, and breach the statutory mandate that only assigned APJs can deliberate on IPRs. Such communications are not "deliberative" in any lawful sense because they involve individuals who have no authority to exert secretive influence in the decision-making process.

Thus, Malone argues that documents circulated to nonpanel judges are not "deliberative" and that only drafts and communications that remained within and among the three-judge panel could be protected by the deliberative-process privilege.

This argument, we conclude, takes far too narrow a view of judicial deliberation, whether by a three-judge panel of the PTAB or, indeed, by judges more generally.

The PTAB is an adjudicating body within the PTO made up of four designated agency management employees and more than 200 administrative patent judges. *See* 35 U.S.C. § 6. And members of the Board are assigned to perform adjudicative functions, such as deciding appeals from adverse decisions of primary patent examiners, *see id.* § 134(a), as well as conducting "inter partes reviews and post-grant reviews" of existing patents, *id.* § 6(b); *see also id.* § 316(c).

Inter partes review proceedings are essentially adversary proceedings in which a third party files a petition to review the claims of a patent, effectively bringing an action against the patent and its owner to challenge the patent. *See* 35 U.S.C. § 311(a). And a panel of three patent judges is assigned to conduct the review proceeding and issue a "final written decision" to resolve the challenge. *Id.* §§ 316(c), 318(a).

During the course of deliberating on their decision, panel judges are authorized to, and in practice actually do, circulate draft opinions to nonpanel judges and request their

10

input, but the panel retains "sole discretion" whether to accept any such input. 37 C.F.R. § 43.5(b); *see also id.* § 43.4(b)–(c). And to protect that discretion, the four management members of the PTAB are prohibited from "initiat[ing] communication, directly or through intermediaries, with any member of the panel regarding the decision." *Id.* § 43.4(a); *see also id.* § 43.3(a).

The PTAB treats this circulation practice as "part of the Board's deliberative process," designed "to promote decision consistency and clarity." PTAB, *Standard Operating Procedure 4*, at 1 (Oct. 5, 2023). It intends that nonpanel judges will provide the panel judges "with information regarding potential conflicts or inconsistencies with relevant authority . . . [and] with other PTAB decisions," as well as "suggestions for improved readability and stylistic consistency." *Id.* at 2.

This PTAB practice of circulating draft opinions to nonpanel judges is similar to the practice followed by the judiciary more generally. And this is not surprising, as the inter partes review proceeding is "an adversarial process before the Patent Office that mimics civil litigation." *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 359 (2018). Like the practice followed by patent judges, judges of the federal courts of appeals mostly circulate draft opinions to nonpanel members before issuing their final opinions. This circulation practice provides panel judges with commentary, suggestions, edits, questions, and similar input designed to improve the final panel decision, as the practice gives the panel the insight, experience, and knowledge of fellow judges. Indeed, just as the PTAB has, many courts of appeal have formalized their circulation process. *See, e.g.*, 3d Cir. I.O.P. 5.5.4 (explaining when drafts of opinions must "circulate to non-panel judges"); 6th Cir. I.O.P.

32.1(a)(3) (noting that "[a]ll judges receive copies of proposed published opinions"); 10th Cir. R. 40.1(B) (noting that "before any published opinion issues, it is generally circulated to the full court and every judge on the court is given an opportunity to comment"); D.C. Cir. Handbook XII.C (providing that "[f]inal drafts of all opinions to be published are also circulated to all judges on the Court"); Fed. Cir. I.O.P. 10.5 (providing that after the panel votes on a precedential opinion, "the authoring judge circulates the opinion and any concurring or dissenting opinions, with a transmittal sheet, to the full court"). And, indeed, we have our own rule that requires us to submit to all judges on our court, including senior judges, any "proposed opinion in an argued case . . . and [solicit] their comments" before the opinion is finalized. 4th Cir. I.O.P. 36.2. Such a practice has never been considered unlawful, improper, or even ill-advised. To the contrary, it is understood as a regular and beneficial aspect of "deliberation," as it is designed to improve the quality of the opinions issued by panels of judges and ultimately to improve the administration of justice, to the benefit of the public, as well as the court or, in this case, the PTAB.

Nonetheless, Malone maintains that the circulation of proposed opinions to nonpanel judges "involve[s] [an] improper *ex parte* communication[] that violates due process, the Administrative Procedure Act . . . , and the USPTO's own regulations," namely 37 C.F.R. § 42.5(d). He argues that "[t]he improper *ex parte* communications at issue here should not be considered 'deliberative' because they were not *lawfully* prepared to help the agency formulate its position." This argument, however, relies on a fundamental misunderstanding of *ex parte* communications.

12

*Ex parte* communications are generally defined as one adverse party's communication with the decisionmaker in the absence of the other adverse party. *See, e.g.*, *RZS Holdings AVV v. PDVSA Petroleo S.A.*, 506 F.3d 350, 357 (4th Cir. 2007); *see also* 5 U.S.C. § 557(d) (providing the APA's prohibition on *ex parte* communications relevant to the merits of a proceeding between the agency and interested parties outside the agency). And while the unilateral communication from one party to a proceeding to the decisionmaker, without the knowledge or input of the opposing party, is *ex parte* and usually unlawful, the communication between two judges, whether on a court of appeals or the PTAB, is not an *ex parte* communication. *See Pendleton v. Revature LLC,* No. 2:22-cv-01399-TL, 2025 WL 2586448, at *2 (W.D. Wash. Aug. 27, 2025) (explaining that "ex parte communication refers only to communications between a judge and a party and not between two judges"); *In re A.H. Robins Co., Inc.*, 602 F. Supp. 243, 246 (D. Kan. 1985) (similar).

Malone's reliance on the PTO's regulation prohibiting *ex parte* communications does not help his argument. That regulation, 37 C.F.R. § 42.5(d), defines *ex parte* communications in the traditional sense, prohibiting a party from communicating with a Board member "unless both parties have an opportunity to be involved in the communication." 37 C.F.R. § 42.5(d); *see also* 5 U.S.C. § 557(d) (APA's similar definition).

At bottom, we conclude that the circulation practice of the PTAB under which patent judges circulate draft opinions to nonpanel judges on the Board does not amount to

13

*ex parte* communications and that such communications remain part of the deliberative process for purposes of FOIA Exemption 5.

C

Finally, Malone contends that "the deliberative process privilege should also not apply here because the communications sought by [him] shed light *on government misconduct* — namely, violations of the APA, due process, and the USPTO's regulations against *ex parte* communications. Documents cannot be properly withheld where they 'cannot be construed as being part of any proper governmental process.'" (Emphasis added).

While this is essentially an extension of Malone's argument that the PTAB practice of circulating draft opinions involves *ex parte* communications, the further claim that the practice constitutes government misconduct is utterly unsupported by law. Moreover, it is simply untenable to assert that government misconduct bears on the application of Exemption 5. FOIA itself provides no such exception. *See Rudometkin*, 140 F.4th at 492 (holding that "no government misconduct exception exists for FOIA Exemption 5" (cleaned up)).

Finally, FOIA is not a vehicle by which to bring a collateral attack on the legality or constitutionality of broader agency policy. In FOIA, "production of documents is the beginning and the end of [the] claim." *Habeas Corpus Res. Ctr. v. U.S. Dep't of Just.*, No. 08-cv-2649, 2008 WL 5000224, at *4 (N.D. Cal. Nov. 21, 2008).

\*      \*      \*

14

For the reasons given, the judgment of the district court is

AFFIRMED.

15