# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

Nos. 00-3831/01-1006
_____

| | | |
|---|---|---|
| Thomas E. Bauer, | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Transitional School District of the City | * | |
| of St. Louis; Lisl King Williams; | * | |
| Thomas B. Klevorn; James H. Buford; | * | |
| St. Louis Board of Election | * | |
| Commissioners; Nanette Baker; | * | |
| Edward Ottinger; Joseph Neil; Velma | * | |
| Martin, as Members of the Board of | * | Appeals from the United States |
| Election Commissioners for the City of | * | District Court for the Eastern |
| St. Louis, | * | District of Missouri. |
| | * | |
| Defendants, | * | |
| | * | |
| Board of Education of the City of | * | |
| St. Louis, | * | |
| | * | |
| Defendant/Appellant, | * | |
| | * | |
| Marlene Davis; John P. Mahoney; | * | |
| Harold M. Brewster; Williams C. | * | |
| Haas; Marybeth McBryan; Paulette | * | |
| McKinney; William Purdy; Madye | * | |
| Henson Whitehead, | * | |
| | * | |
| Defendants. | * | |

_____

Submitted:  May 18, 2001

Filed:   July 2, 2001
_____

Before WOLLMAN, Chief Judge, BEAM, Circuit Judge, and BARNES,[1] District
     Judge.

_____

BEAM, Circuit Judge.

The Board of Education of the City of St. Louis ("the Board") appeals the district court's[2] order remanding this matter to the Twenty-Second Judicial Circuit Court of Missouri (City of St. Louis) for want of subject matter jurisdiction.  Because  we are without jurisdiction to entertain this appeal, we dismiss.

**I.**

The relevant facts are largely undisputed.  In May 1998, the Missouri legislature enacted a provision entitled the "St. Louis Students' Bill of Rights" ("Students' Bill of Rights").  Once implemented, the Students' Bill of Rights would govern various aspects of how the Board runs its district, including which school students may attend, a student's right to transfer and expenditures per student.  Before taking effect, however, the Students' Bill of Rights requires voter approval.  It provides:

_____

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas, sitting by designation.

[2]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

The provisions of the St. Louis students' bill of rights shall only become effective upon approval by a majority of the voters of the city of St. Louis voting thereon. The governing board of the transitional district . . . may conduct a legal analysis of the program enumerated in this section, shall publish any such analysis and make the analysis available to the public and shall propose, to the extent that the program is consistent with the Missouri and United States Constitutions, place [sic] before the voters of the city of St. Louis no later than March 15, 1999, a proposal to implement the program. If approved by a majority of such voters, the program shall be implemented consistent with the Missouri and United States Constitutions.

Mo. Stat. Ann. § 162.666(10). The transitional district, created by the same legislation, was thus charged with placing the Students' Bill of Rights on the ballot, subject to its constitutionality. The Board asserts that during the fall of 1998, the transitional district had its legal counsel review the Students' Bill of Rights. Relying on counsel's conclusion that the Students' Bill of Rights was unconstitutional in its entirety, the transitional district refused to place it on the ballot. Contrary to the statute, the Board apparently never published nor made public its legal analysis.

During the same period, the Board was engaged in settlement negotiations in a school desegregation case captioned Liddell v. Board of Education, which had subjected the Board to two decades of federal court oversight. In March 1999, the parties in Liddell reached a final settlement agreement, which the district court in that case incorporated into its final order. The Board contends that the provisions of the Students' Bill of Rights will substantially conflict with the provisions of the Liddell settlement order.

On November 30, 1998, appellee Thomas Bauer filed a Petition in Mandamus in Missouri state court, seeking an order instructing the transitional district to place the Students' Bill of Rights on the ballot. On January 22, 1999, the Missouri court dismissed Bauer's petition on the grounds that the requested order could be granted

only after a determination of the Students' Bill of Rights' constitutionality, and that Bauer had not requested such relief. The Missouri court granted Bauer leave to file an amended petition, which he did, seeking a declaratory judgment that the Students' Bill of Rights is constitutional under both the United States and Missouri Constitutions.

In July 1999, the State Board of Education dissolved the transitional district, which it was empowered to do once the latter had accomplished its purpose. This decision has apparently gone unchallenged. Bauer then filed a second amended petition which added the Board as a defendant. On October 14, 1999, the Board filed a notice of removal and took the case to federal court. The notice cited 28 U.S.C. § 1331, federal question jurisdiction, as the basis for removal. On November 4, 1999, Bauer filed a motion to remand. Bauer's motion did not challenge the removal on the basis of subject matter jurisdiction, and the district court denied his motion on January 10, 2000. On September 15, 2000, two weeks before the case was to go to trial, the district court, upon its own motion, remanded the case to the Missouri court for want of subject matter jurisdiction. The Board filed a motion to alter or amend that ruling, which the district court denied on November 8, 2000. The Board now appeals these two rulings. The Board has also filed a motion to amend the jurisdictional basis provided in its notice of removal to include 28 U.S.C. § 1443 and the All Writs Act, 28 U.S.C. § 1651, which motion we take up along with its other arguments.

## II.

This appeal raises entwined questions of jurisdiction. It primarily questions whether the district court had subject matter jurisdiction to entertain Bauer's removed claim. It also, however, raises the related and predicate question of whether we have appellate jurisdiction to entertain the Board's arguments regarding the district court's subject matter jurisdiction. Because we conclude that we lack appellate jurisdiction, we do not reach the underlying federal subject matter jurisdiction questions.

-4-

"All federal courts, other than the Supreme Court, derive their jurisdiction wholly from the exercise of the authority to 'ordain and establish' inferior courts, conferred on Congress by Article III, § 1 of the Constitution." Lockerty v. Phillips, 319 U.S. 182, 187 (1943). "Removal jurisdiction is therefore completely statutory, and we cannot construe jurisdictional statutes any broader than their language will bear." In re County Collector, 96 F.3d 890, 895 (7th Cir. 1996); accord Williams v. Rogers, 449 F.2d 513, 518 (8th Cir. 1971).

By statutory mandate, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d). Congress has permitted only one exception to this rule: "an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise." Id. Section 1443, in turn, provides for removal of certain civil rights actions. 28 U.S.C. § 1443. The Board argues its removal, and thus this appeal, lies within the mandate of 28 U.S.C. § 1443(2).[3]

Section 1443(2) permits removal of suits initiated in state court against a party "[f]or any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law." In City of Greenwood v. Peacock, 384 U.S. 808 (1966), the Supreme Court rejected the argument that, for removal purposes, federal civil rights statutes deputize anyone

---

[3]Bauer argues the Board is estopped to raise this argument because its notice of removal cited only 28 U.S.C. § 1331 federal question jurisdiction as a basis for removal, and not section 1443(2). The Board, for its part, urges us to look beyond the contents of the notice of removal or, in the alternative, to grant its motion to amend its stated jurisdictional basis. Rather than take up these arguments, we proceed directly to the question of whether the Board's removal could stand under the provisions of section 1443(2). Because we find that it could not, we do not answer whether the Board should be limited to the grounds for removal stated in its notice, or whether the Board may amend that notice before this court on appeal.

seeking to exercise a right thereunder. <u>Id.</u> at 810-13. Rather, upon lengthy analysis of the origins and intent of the statute, the Court held section 1443(2) "confers a privilege of removal only upon federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights." <u>Id.</u> at 824.

The Board directs us to <u>Bohlander v. Independent School District Number One</u>, 420 F.2d 693 (10th Cir. 1969), for the proposition that a school board subject to a federal desegregation order may exercise removal authority under section 1443(2) when its obligations under that order are challenged. The school board in <u>Bohlander</u> was subject to a federal court desegregation plan approved by a federal district court after litigation initiated by the Attorney General of the United States. The removed lawsuit sought an injunction to prevent the school board from implementing a portion of that plan. <u>Id.</u> at 694. That court concluded that while acting in concert with the Attorney General in trying to implement the desegregation plan, the school board was acting under color of authority derived from federal civil rights laws, and consequently fell within the scope of section 1443(2). <u>Id.</u>

In this case, the Board asserts the Students' Bill of Rights will conflict with the settlement agreement reached in <u>Liddell</u>, which it argues brings Bauer's suit within the reach of <u>Bohlander</u>. Without passing on <u>Bohlander</u>'s reasoning, we do not think it sufficiently analogous so as to govern the instant matter. There, the desegregation order had been obtained by the Attorney General, an officer of the United States, and the removed lawsuit directly attacked the implementation of that plan. Here, the <u>Liddell</u> suit was initiated by a class of private plaintiffs seeking to enforce rights guaranteed by federal law, but not charging them with any specific duties under civil rights laws. <u>See</u> <u>Adams v. United States</u>, 620 F.2d 1277, 1281 (8th Cir. 1980); <u>Liddell v. Board of Educ.</u>, No. 4:72CV100 SNL (E.D. Mo. Mar. 12, 1999) (Memorandum and

Order Approving Settlement Agreement).  Additionally, Bauer's state court suit does not directly attack the Liddell settlement.[4]

We think this case more closely mirrors In re County Collector, where taxpayers initiated state court challenges to taxes levied by a school district pursuant to a federal court consent decree in a desegregation case.  96 F.3d at 893-94.  The district intervened in the various actions and removed them to federal court, asserting in part that it was acting as a federal officer pursuant to federal civil rights statutes.  Id. at 894.  Taking up the school board's section 1443(2) argument, the Seventh Circuit held that even had the district court's order specifically required the school district to levy the taxes, the fact that the obligation flowed from a consent decree curtailed any possible removal jurisdiction under section 1443(2).  Id. at 899.  With a consent decree, the court noted, "'it is the agreement of the parties, rather than the force of the law upon which the complaint was originally based, that *creates the obligations* embodied in a consent decree.'"  Id. (emphasis in original) (quoting Firefighters Local No. 93 v. City of Cleveland, 478 U.S. 501, 522 (1986)).

In this case, the Board's obligations regarding Liddell flow from the parties' final settlement in that litigation, not from any statutorily mandated duties.  The fact that the district court incorporated that settlement into its final order simply makes the settlement more analogous to the consent decree at issue in In re County Collector.  As with consent decrees, settlement agreements are creatures of private contract law.  Gardiner v. A.H. Robins Co., 747 F.2d 1180, 1188 (8th Cir. 1984).  Accordingly, in

---

[4]Indeed, whether or not any such conflict exists at all remains unclear at present, and will ultimately have to be resolved by the state court looking at the merits of Bauer's claim and whatever defenses the appropriate defendant(s) may raise.  At oral argument, Bauer seemed to indicate that any such conflict could be avoided by delaying the implementation of sections of the Students' Bill of Rights until conflicting provisions of the settlement agreement had expired.

performing under the Liddell agreement, the Board is not performing duties mandated by a federal civil rights statute.

Because the Board is not a federal officer or agent "authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights," as required by Greenwood, it cannot take advantage of removal under section 1443(2). As it cannot avail itself of that section, the Board may not use the exception to the otherwise blanket cap on our appellate jurisdiction imposed by section 1447(d).

The Board additionally argues we have appellate jurisdiction pursuant to Xiong v. Minnesota, 195 F.3d 424 (8th Cir. 1999). There, the district court remanded an action against a school board which raised the same claims as an earlier action, in which that court had permitted a consent decree. Id. at 425. After acknowledging that governing precedent, directly on point, gave it removal jurisdiction under the All Writs Act, the district court proceeded to ignore that precedent and remanded the case. We held that "[w]hen a district court remands a properly removed case on grounds the court lacks authority to consider, however, § 1447(d) does not bar review." Id. at 426.

Xiong in turn relied on the Supreme Court's holding in Thermtron Products Inc v. Hermansdorfer, 423 U.S. 336 (1976). In that case, the district court had remanded a case because its own docket was too crowded to afford the plaintiff a speedy trial. Id. at 340. The Court recognized that section 1447(d) bars review of all decisions to remand, even if erroneous, so long as made on grounds within the district court's authority. Id. at 343. Because the district court had remanded on grounds it had no right to consider, the Court permitted appellate review. Id. at 344.

The Board first argues that the district court had subject matter jurisdiction under the All Writs Act. The Board then argues that by permitting the remand, the district court necessarily violated governing authority, which in turn justifies our jurisdiction on appeal under Xiong to hear its arguments regarding the district court's jurisdiction.

The rub of the Board's argument, however, is that in the process of determining our own jurisdiction, it requires us to visit the merits of the underlying jurisdictional argument. We do not think <u>Xiong</u> intended such broad appellate authority. To read it as such would eviscerate the terms of Congress' mandate in 28 U.S.C. § 1447(d) that, with the sole exception of orders issued under section 1443, no order remanding a removed case to state court may be reviewed on appeal. In light of the limited exception in <u>Thermtron</u>, we think <u>Xiong</u> spoke only to the narrow exception before us in that case–where a district court patently ignores clearly governing precedent.[5]

The Board has presented no evidence of such misconduct. Nor has the Board brought this case within the scope of <u>Thermtron</u> by suggesting that the district court considered an improper basis in remanding the suit. Indeed, the Board did not even present many of its jurisdictional arguments to the district court.

### III.

Accordingly, we conclude we are without appellate jurisdiction to review the district court's remand order. Because we lack jurisdiction to entertain this appeal, we deny the Board's motion to amend its jurisdictional statement and dismiss the appeal.

---

[5]The result in <u>Xiong</u> flowed not so much from our law of jurisdiction but rather from this court's inherent authority to govern the district courts beneath it, and from the rather unremarkable proposition that district courts may not flatly ignore the mandates of the appellate courts above it. <u>See</u> <u>BPS Guard Services, Inc. v. N.L.R.B.</u>, 942 F.2d 519, 524 (8th Cir. 1991).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.